## VANN v. THE STATE OF GEORGIA.

1. If the court charges fully and fairly the doctrine of reasonable doubt, that is sufficient; and it is unnecessary to repeat it at the end of every sentence of his charge when instructing the jury how they should find if they believe the evidence makes out a case of guilt.

2. The State having proved an intentional killing by the defendant, the presumption of innocence is so far overcome as to make it necessary for the defendant to show that such killing was either justifiable or attended with such mitigating circumstances as to make the crime less than murder.

3. A charge to the effect that, if the jury believed that the defendant, without sufficient provocation, made an assault upon deceased, and deceased did no more than push defendant (which, under such circumstances, he would be justified in doing), then, if defendant began shooting at deceased, deceased had the right to defend himself with a pistol or anything else, provided he went no further than a reasonable, prudent man might go in his own defence, was no expression of an opinion on the evidence, but taken in connection with the whole charge on this subject, was legal.

(a) There was no error in the charge as to the legal effect of certain testimony, and in the presentation of a particular hypothesis thereon, the truth of such testimony and the correctness of such hypothesis being left to the jury to determine. Thus hypothetically reciting certain things in evidence was not an expression of opinion on the testimony, nor a statement to the jury of what had been proved.

4. In charging on the subject of reasonable doubt, the language that it must be "not a conjured up doubt—such a doubt as you might conjure up to acquit a friend, but one that you could give a reason for," though unusual, was not an incorrect presentation of the doctrine.

5. The objection that the use by the court of the words, "there is something said in regard to drunkenness," had a tendency to make light of the plea of drunkenness (which was insisted on by the defendant), and led the jury to believe that the court attached no importance to this plea, is too trivial for serious comment.

6. It was not error to refuse to charge that, "while drunkenness is no excuse for crime, yet it may be considered as to whether the prisoner was excited at the time of the killing by passion or malice." Simply to prove that a man was drunk and killed another in passion would not reduce the crime from murder to manslaughter.

7. There was no tendency to make light of the defence on the question of intention in the court's saying, "I believe there was something said about intention, which I might have given you in another connection," etc.

8. If a man uses a dangerous and deadly weapon with violence upon another, and the use of that weapon and the manner of its use have a direct tendency to destroy human life or to do some great bodily harm, it is a necessary conclusion that the person thus using the weapon intends to take life or do great bodily harm.

9. One of counsel for the State said to the court: "Those clothes were

offered in defence. We do not care anything about their going out if counsel on the other side do not." Said the court: "Yes, we must be particular about that. The McCoy case was reversed partly on that ground. Do you desire that they should go out or not?" Counsel for the defendant replied, "No, sir." The court then directed the jury to retire and make their verdict. The jury were familiar with the facts in the McCoy case. *Held*, that while the remark of the court as to the McCoy case might have been omitted, it is not susceptible of the construction that it intimated an opinion of the court as to what the verdict in the present case should be. This court does not see that it could do the prisoner any harm.

10. An exception that the court failed to charge a certain principle is not well taken, where it does not appear that such charge was requested, and where the charge given, as a whole, sufficiently covers such principle.

11. The charge as to the right of the jury to recommend to mercy was clear; and the language, "It is for you to say, under the law and the evidence in the case, whether you see fit to make this recommendation or not," taken in connection with the rest of the charge on this subject, imposed no restriction upon such right.

12. It is the duty of the court to interrupt counsel when misstating the evidence to the jury, and while the corrections thus made by the judge in this case appear to have been immaterial, this court cannot say that he erred in so interrupting, especially as he instructed the jury that when the court and counsel differed, the jury must decide for themselves what was the truth of the matter.

(a) It was not error, when court and counsel differed as to what a witness testified, for the court to require the stenographer to read from his notes the exact words of the witness.

13. Grounds complaining of what the court said in private conversation with one of counsel for the defendant, and of his directing said counsel, after a temporary suspension of argument, to proceed, and saying, "I am getting tired," are too trivial to notice.

14. Evidence as to threats made by the deceased, and not communicated to the defendant, was properly rejected.

15. On a motion for a new trial in a criminal case because of the previously expressed opinion of one of the jurors who rendered the verdict, the circuit judge, as to this question, occupies the place of a trior, and this court will not undertake to control his judgment as to the credibility of the proof, unless it is clear and manifest from the record that he erred.

16. The evidence demanded the verdict.

July 8, 1889.

Criminal law. Charge of court. Malice. *Onus.* Practice. Verdict. Evidence. New trial. Before

Judge BROWN.   Chattooga superior court.   September term, 1888.

Reported in the decision.

WRIGHT, MEYERHARDT & WRIGHT, J. M. BELLAH and WESLEY SHROPSHIRE, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, C. G. JANES, solicitor-general, and W. M. HENRY, for the State.

SIMMONS, Justice.

The defendant was indicted, tried and convicted upon the charge of murder.   He made a motion for a new trial upon many grounds, which was overruled, and he excep'ed.

1. The 4th, 5th and 6th grounds may be considered together.   In these grounds it is complained that the court instructed the jury, in substance, that if after they had examined the evidence, and weighed it fairly and impartially, without favor or affection to either party, they were satisfied the defendant was guilty, they ought to so find.   The objection to this instruction was, that the court failed to add, "if the jury were satisfied beyond a reasonable doubt."   Taking the whole charge together we do not think the exceptions taken in these grounds are well-founded.   We do not think it is necessary for the court to qualify every principle it gives in charge to the jury by the addition of these words.   If the court charges fully and fairly the doctrine of reasonable doubt, that is sufficient, and it is unnecessary to repeat it at the end of every sentence of his charge when instructing the jury how they should find if they believe the evidence makes out a case of guilt.   *Darby* v. *The State*, 79 *Ga.* 63.

2. Complaint is made in the 7th ground that the court charged the jury that, "while the presumption is in favor of innocence, yet when the evidence shows the fact that one man has killed another, the law presumes that the

killing was with malice, and he stands a murderer in the eyes of the law until he shows that he was not,—either that it was justifiable or excusable, or that there were circumstances that mitigated it or brought it down to a lower offence. He can show that either by his own evidence, or by the State's evidence, or by circumstances themselves, if he can. Nevertheless, that burden is upon him, and if he fails to show that fact, the law presumes that it was a malicious killing." The objection to this charge was, that it placed the burden of proof on the defendant to show his innocence. Reading the whole charge on this subject together, we think the court meant, that the State having proved an intentional killing by the defendant, the presumption of innocence is so far overcome as to make it necessary for the defendant to show that such killing was either justifiable or attended with such mitigating circumstances as to make the crime less than murder. " When an unauthorized killing is shown, the law presumes it was done with malice, unless the proof accompanying it shows that it was not done with malice. If the proof shows the unlawful killing, in the absence of all else the law presumes that it was done with malice aforethought. If the proof that shows the killing itself discloses that it was done without malice, of course the presumption does not exist, but if the accompanying proof does not, then the burden is thrown upon the defendant to show that it was done without malice." And this has been the law, as far as we know, from the time of Sir Michael Foster down to the present day. It certainly has been the doctrine announced by this court from the case of *Hudgins* v. *The State*, 2 *Ga.* 173, to *Marshall* v. *The State*, 74 *Ga.* 26. In the case of *Hudgins* v. *The State, supra,* LUMPKIN, C. J., says: "The law presumes every homicide to be felonious until the contrary appears from circumstances of alleviation, excuse or justification; and it is incumbent on the

prisoner to make out such circumstances to the satisfaction of the jury, unless they arise out of the evidence produced against him." See also cases collected in Hopkins' Penal Laws, §§858–9.

3. The 8th, 9th and 10th grounds are as follows:

8th. That the court erred in charging as follows: "If Vann, without any sufficient provocation, made an assault upon White, and White did no more than push him (which he would be justified in doing, under the circumstances), then, if Vann began shooting at White, White had the right to defend himself with a pistol or anything else, provided he did not go further than the circumstances would justify,—that is, further than a reasonable, prudent man might go, in his own defence." This is alleged to be error because it quotes from the testimony of the State, and expresses an opinion on that testimony, and particularly because the court expressed the opinion that if White did no more than push Vann down, he would have been justified in doing so under the circumstances.

9th. That the court erred in charging as follows: "If the defendant used the first opprobrious language, the fact that the deceased used opprobrious language back would not justify his assaulting him by putting his pistol in his face, if he did, nor an assault and battery; nor would the use of opprobrious words in any case authorize a man to assault another with a deadly weapon." This is alleged to be error because it quotes from the testimony of the State, and thereby expresses an opinion on the testimony.

10th. That the court erred in charging as follows: "If you believe from the evidence that Vann was the assailant, and White did no more than a reasonable and prudent man would do to defend himself when he pushed him down and fired the shots he fired, and then,

v 83-4

after doing no more than you think he had the right to do, was walking off and made no attempt to attack the prisoner, if the prisoner shot and killed him that would be no justification; because if he brought about the emergency he could not take advantage of it, anyway, because if White did no more than was necessary to his defence he had the right to do that, and if Vann did that it would be no justification." This is alleged to be error because it stated to the jury what the testimony was and what had been proved.

The objection in each of these grounds is, that the charge of the court quotes from the State's testimony, and is an expression of opinion on that testimony. We do not think that the court, in the charges here complained of, gives any expression of opinion as to what has been proved. His purpose evidently is to charge upon the effect of certain testimony, provided the jury believe this testimony to be the truth of the case. He says, " If you are satisfied that these are the facts, then White had the right to defend himself with a pistol," etc. The portion of the charge which is specially objected to in the 8th ground is, in substance, that if the jury were satisfied that Vann, without any sufficient provocation, made an assault upon White, and if they were satisfied that White did no more than push him, then he would be justified under the circumstances. There was no error in this. Taking the view of counsel for plaintiff in error, still we think it is true that if a man assault another without sufficient provocation, the person thus assaulted would be justified in pushing him; and construing it most strongly against the State, that may be what the court meant in this part of the charge. We think, however, that the charge means that if the jury believed that Vann, without sufficient provocation, made an assault upon White, and if they believed that White did no more than push him, and if they believed

he would be justified under the circumstances, then if Vann began shooting at White, White had the right to defend himself. It was no expression of opinion on the evidence, but was a sound exposition of the law. The court did not say that such an assault had been made, but that if the jury believed such an assault had been made, White would have been justifiable in pushing the assailant. Besides, after charging in the language complained of, that the jury might have both sides of the case impartially before them, the court goes on to say : " Every man has the right to defend himself. If this matter was a scheme of White's to get advantage of Vann,—if he provoked the difficulty and got Vann into it and took advantage of him and shot him when he was the aggressor, then Vann would have the right to defend himself." Taken in connection with the whole charge on this subject, we think that the jury properly understood it, and that no injustice was done to the accused.

Nor, as we have said, do we think there was any expression of opinion in the charge complained of in the 9th ground. It seems to us that the court, in this portion of the charge, studiously avoided saying what had been proved, simply charging as to the effect of certain testimony, provided the jury believed it to be true. By reference to the charge of the court itself, it will be seen that at the time the language objected to was used, the court was charging generally as to the use of opprobrious words; and after using the language complained of, the court said, " You are to see how this matter was brought about, who was in fault," etc. And again, " And you are the judges of the evidence and what it shows, and the court intimates nothing to you about what has or has not been proven."

The same remarks will apply to the objection made in the 10th ground. The charge there complained of

was given in the same general connection with the charges complained of in the two preceding grounds, and here, as in those cases, the court is but presenting an hypothesis of the case, the truth of which the jury is left to determine, and charging the law which governs such a case should the jury believe it to be true. As to the language particularly objected to in this ground, it is clear to our minds, from the connection, that the court meant to say, "If you believe he was doing. no more than he had a right to do," and "if you believe he was walking off," etc.; and thus read, it is not an expression of opinion.

4. The 11th ground of the motion for a new trial complains of this charge: "But the doubt must be a reasonable doubt, not a conjured up doubt—such a doubt as you might conjure up to acquit a friend, but one that you could give a reason for." This is objected to on the ground that it does not correctly give the law on the subject of reasonable doubt. We see no objection to this charge. It seems to us that it correctly states the doctrine of reasonable doubt. While the language used is unusual, it is substantially in accordance with the recognized definition of reasonable doubt. In using the words, "not a conjured up doubt—such a doubt as you might conjure up to acquit a friend," the court evidently meant to say, "not such a doubt as might influence you in the case of a friend in whose favor you were strongly prejudiced"; because in the absence of such a caution, even an imaginary doubt might decide a juror in favor of a friend in whom his confidence was so great as to make it difficult for him to credit him with the commission of such a crime. It is difficult to see what construction could be reasonably placed upon this charge which would take away from the prisoner the benefit of a reasonable doubt as understood by the law.

5. The next ground (the 12th) is too trivial for serious

comment.   The only objection made to the charge com-
plained of in this ground is the use by the court of the
words, "There is something said in regard to drunken-
ness"; it being contended that these words had a ten-
dency to make light of the plea of drunkenness, which
was strongly insisted upon by the defendant, the jury
being led to believe that the court attached no import-
ance to this plea.   We will not discuss it further.

6. The 13th ground complains that the court refused
to charge, as requested by counsel for the defendant,
that "while drunkenness is no excuse for crime, yet it
may be considered as to whether the prisoner was ex-
cited at the time of the killing by passion or malice."
We do not think there was error in the refusal to give
this in charge.   It is too vague and indefinite.   Passion
will only mitigate when there has been "some actual
assault upon the person killing, or an attempt by the
person killed to commit a serious personal injury on
the person killing, or other equivalent circumstances to
justify the excitement of passion, and to exclude all
idea of deliberation or malice, either express or implied."
Code, §4325.   Simply to prove that a man was drunk
and killed another in passion, would not reduce the
crime from murder to manslaughter.

7.   The alleged error complained of in the 14th
ground is also too trivial to mention.   The court said,
"I believe there was something said about intention,
which I might have given you in another connection,"
etc.   This is alleged to be error as tending to make
light of the defence on the question of intention.

8.   The 15th ground complains that the court erred
in charging as follows:  "Where a dangerous and
deadly weapon is used with violence upon the person
of another, and this has a direct tendency to destroy life
or do some great bodily harm to the person assailed,
the intention to take life or do some great bodily harm

is a necessary conclusion from the act." The use of the words, " is a necessary conclusion," is assigned as erroneous. We see no error in this charge. It seems to us that if a man uses a dangerous and deadly weapon with violence upon another, and the use of that weapon and the manner of its use has a direct tendency to destroy human life or to do some great bodily harm, it is a necessary conclusion that the person thus using the weapon intended to take life or do great bodily harm. The judge who gave this in charge to the jury seems to have had very high authority for the soundness of the principle thus announced. The charge upon this subject (of which the part here complained of is an extract) seems to have been taken from the case of York *v*. The State, 9 Met. (Mass.) 93. See that case for an able and learned opinion on this subject, by Chief Justice Shaw, which also discusses the error complained of in the 7th ground of the motion, which we have already discussed. This case is quoted with approval by Mr. Greenleaf, in 1 Greenl. Ev. §34, and 3 *Id.* §14, the charge complained of being embodied in the 3d footnote of the latter section. It is also sustained by the case of Rex *v*. Farrington, Russell & Ryan, 207, where, the defendant being indicted for setting fire to a mill with intent to injure the occupiers thereof, it was held, that an injury to the mill being a necessary consequence of setting fire to it, the intent to injure might be inferred; for a man must be supposed to intend the necessary consequences of his own acts. In the case of *Freeman* v. *The State*, 70 *Ga.* 736, it is said, " Every person is presumed to intend the natural and necessary consequences of his own acts." Other authorities might be cited on this subject, but these we think are sufficient.

9. The 16th ground complains that the court engaged in the following colloquy with one of the coun-

sel for the defendant: Counsel said: "Those clothes were offered in evidence. We do not care anything about their going out if the counsel on the other side do not." The court said: "Yes, we must be particular about that. The McCoy case was reversed partly on that ground. Do you desire that they should go out or not?" Whereupon one of the counsel for defendant said: "No, sir." The court: "Very well, gentlemen, you may retire and make up your verdict." This was alleged to be especially erroneous in that the court said, "The McCoy case was reversed on that ground," thereby intimating that in this case the jury would or should find the defendant guilty, and that the clothes should go out so that the verdict might not be reversed on that ground. The jury were familiar with the facts in the McCoy case, McCoy having been recently tried in Walker county for the killing of a sheriff in Chattooga county. It was contended that this colloquy between court and counsel tended to prejudice the jury against the defendant, and led them to believe that the court was in favor of his conviction. While this remark by the court might have been omitted, still we do not see that it could do the prisoner any harm. It is not susceptible of the construction put upon it, that it intimated an opinion of the court as to what the verdict would or should be. The court evidently meant that caution should be used against the commission of error which would make another trial necessary, in the event the case reached the Supreme Court.

10. The 17th ground complained that the court erred in failing to charge that it was the duty of the State to make out its case, and that the allegations in the bill of indictment must be proved beyond a reasonable doubt. It does not appear that the court was requested to give this in charge, and the charge given, as a whole, sufficiently covers the points here presented.

11. The 18th ground complains of the following charge: "If you find the defendant guilty of murder, then you have the right, within your discretion, to recommend that he be punished by confinement and labor in the penitentiary of this State for and during his natural life. If you make that recommendation, then the court is bound to pass that sentence, and that would be the sentence. But if you fail to make that recommendation, and you find him guilty and stop there, the court would be obliged to pronounce the sentence of death; and as to whether you make that recommendation or not, the court has nothing to do. It is a matter solely with the jury. It is a matter which you have in your discretion the right to do, but you have the right to refuse to do it. Therefore you take the case; you are responsible for the verdict you find in it; and it is for you to say, under the law and the evidence in the case, whether you see fit to make this recommendation or not. If you think it ought to be done and have the desire to do so, you have the right, as I have said, and nobody has any right to question your right to do so." This is alleged to be error as vague and misleading, and as imposing restrictions upon the jury not authorized by law, in saying: "It is for you to say, under the law and the evidence in the case, whether you see fit to make this recommendation or not."

This charge seems clear enough, and we do not see how the jury could fail to understand from it their right to recommend to mercy. Nor do we think the language quoted imposed a restriction upon the right of the jury to so recommend, especially when taken in connection with the rest of the charge on the subject. The court told the jury: "It is a matter solely with the jury; it is a matter which you have in your discretion the right to do," etc. Again, just following the lan-

guage specially objected to, he says :   " If you think it
ought to be done and have the desire to do so, you have
the right," etc.   In the case of *Inman* v. *The State*, 72
*Ga.* 269, the trial judge, in charging the jury upon this
subject, said :   " If you find him guilty, and the case be
one in which you think you are justified in doing so—
the facts and circumstances justify you in doing so,
you can say in your verdict, "We recommend," etc.
This language was upheld by this court.   In the case
of *Valentine* v. *The State*, 77 *Ga.* 470, the trial judge
charged the jury as follows :   " It is for you to say
from the evidence—from all the facts and circumstances
of the case, whether in the event you find him guilty,
you are warranted in recommending him to imprison-
ment in the penitentiary for life" ; and this court held
that to be no error.

12. The 19th ground complains that the court erred
in frequently interrupting counsel in their argument to
the jury, the interruptions being unnecessary and cal-
culated to prejudice the jury against the defendant and
his counsel.   The interruptions are then set out, and
consist of corrections by the court of counsel in their
statements of the evidence and of the law.   We see no
error in the action of the court as complained of in this
ground.   In the case of *Grady* v. *The State*, 11 *Ga.* 253,
this court say that it is not only the privilege of the
court, but its solemn duty, to interrupt counsel when
misstating the evidence to the jury.   In the case of
*Green* v. *The State*, 43 *Ga.* 368, the same ruling was
made, and the decision in *Grady* v. *The State*, *supra*,
quoted and approved.   While the corrections in this
case appear to have been immaterial, we cannot say
that the court erred in interrupting counsel to make
them, especially when the court instructed the jury that
when the court and counsel differed, they must decide
for themselves what was the truth of the matter.   Had

we been presiding in the court below, possibly we might not have interrupted counsel for these small mistakes, especially as the State's counsel was to follow him in the argument, but we cannot hold that it was reversible error to do so.

Nor do we think it was error, when court and counsel differed as to what a witness swore to, for the court to require the stenographer to read from his notes the exact words of the witness. My observation in the superior court has been, that when counsel differ among themselves or with the court as to what is the testimony, it is an every-day occurrence to call upon the stenographer to read his notes in order to settle the difference.

13. The 20th ground is also too trivial to notice. It complains of what the court said in a private conversation with one of the counsel for the defendant. The same may be said of the 21st ground, which complains that the court said to Mr. Shropshire, who had suspended the argument while the jury were drinking water, "Go on, Mr. Shropshire," and then remarked, "I am getting tired."

14. The 22d, 23d and 24th grounds complain of the ruling out of certain threats made by White, the deceased, against Vann. These threats were ruled out because they had not been communicated to Vann. There was no error in the rulings complained of in these grounds. The threats had never been communicated to Vann. *Lingo* v. *The State*, 29 *Ga.* 470; *Hoye* v. *The State*, 39 *Ga.* 718; *Peterson* v. *The State*, 50 *Ga.* 142.

15. The 25th ground claimed that a new trial should be granted because of certain so-called newly discovered evidence which relates to the disqualification of John Pollock, one of the jurors who tried the case. This ground is supported by the affidavits of J. W. Wood and A. W. Wood. They swear, in effect, that on

the first Sunday in May preceding the trial, John Pollock was at the house of the Messrs. Wood in Floyd county, and that he said to J. W. Wood in the presence of A. W. Wood: "If I am one of the jurors that try Vann, his neck will be broken." The character and credibility of the Messrs. Wood are testified to by J. C. Moore, the sheriff of Floyd county, and J. H. Lanham. The defendant and his counsel make affidavit that they were not informed of this until after the trial. Pollock, the juror, made an affidavit denying the statement made by the Messrs. Wood so far as making the remark ascribed to him is concerned. He says that it is quite likely that, in reply to some question or remarks on the subject, he may have said something to the effect that from what he had heard, it was likely that Vann would be hung, but that if he said anything of the kind, it was merely the expression of an immature opinion, arising and expressed only a few days after the homicide, from mere rumors of facts then afloat in the county; that he had no well-grounded, fixed or matured opinion as to the guilt or innocence of Vann; that his feelings toward Vann were and have remained entirely friendly; and that when he was sworn at the trial of the case as to his competency, he answered the questions propounded to him on his *voir dire* truly and exactly, and that if the evidence had not shown the defendant guilty under the law, he could and would have returned a verdict of acquittal. The character and credibility of Pollock are testified to by Taliaferro, Worsham, the sheriff of the county, and Edwards.

On a motion for a new trial in a criminal case because of the previously expressed opinion of one of the jurors who rendered the verdict, the circuit judge, as to this question, occupies the place of a trior, and this court will not undertake to control his judgment as to

the credibility of the proof, unless it is clear and mani-
fest from the record that he has erred. *Ray* v. *The
State,* 15 *Ga.* 223; ·*Costly* v. *The State,* 19 *Ga.* 614.   In
this case the judge heardthe witnesses ; he knew their
character and credibility, and he decided that Pollock
was a competent juror.   We cannot say that he erred
in so doing.

16. Having discussed all the special grounds of the
motion which we deem worthy of notice, it only re-
mains now for us to discuss the general ground that
the verdict is contrary to the evidence.   We have read
the evidence carefully several times, from beginning to
end, and we are convinced that instead of the verdict
being contrary to the evidence, the evidence really de-
manded the verdict.   This unfortunate man seems to
have been the aggressor throughout the whole diffi-
culty.   From early morning until late in the afternoon,
he seems to have pursued the deceased, heaping upon
him curses and abuse whenever they met.   The de-
ceased avoided him, and failed to resent any of the in-
sults heaped upon him.   The accused filled himself
with whiskey, which excited his mind and inflamed his
passions so much that he was a terror to the peace-
able citizens of the town.   At their final meeting late
in the afternoon, he continued his abuse and the use
of vulgar and obscene language towards White, heap-
ing upon him the vilest epithets, and finally drawing a
pistol, with which he slapped White upon the face.
White then pushed him down.   As he arose, he pointed
his pistol in the direction of White and fired.   White
then drew his pistol and fired at Vann twice in rapid
succession ; whereupon he was told by some of the
bystanders to desist ; and although he had his pistol in
position to shoot the third time, he immediately lowered
it and walked off.   As White was walking away from
Vann, and was six or seven steps off—some of the wit-

nesses say as far as ten,—Vann took deliberate aim, and shot and killed him. This state of facts, under the law makes a clear case of murder. If he had killed White while White was shooting at him, under the evidence it would still have been murder; because he brought on the emergency by his own conduct; but after White had ceased to shoot,—after the difficulty was apparently over as far as White was concerned, and as White was walking away from him, making no demonstration against him, he shot and killed him. There was no urgent and pressing danger at the time of the shooting,—indeed there was no danger whatever. The law is, that "if a person kill another in his defence, it must appear that the danger was so urgent and pressing at the time of the killing that in order to save his own life the killing of the other was absolutely necessary." Nothing of this kind appears from the record in this case, but the whole evidence shows that it was a cold-blooded, premeditated murder on the part of Vann.

We sympathize with him and his unfortunate family upon the dreadful fate which he has brought upon himself; but courts and juries cannot yield to their sympathies. The law must be executed. The more strictly it is enforced in cases like this, the less cause will there be for its enforcement. "The way of the transgressor is hard," and he must learn that "the velvet glove of liberty encases the merciless hand of the law."

*Judgment affirmed.*