### BUSH v. THE STATE.

1. When, in passing on a motion to continue a criminal case because of the absence of two material witnesses, the presiding judge directed the trial to proceed, with the statement that he would send for the witnesses and if he did not procure their attendance he would then entertain a motion to continue from the defendant, and when during the progress of the trial an officer returned with one of such witnesses, reporting that the other could not be found, and the defendant did not renew the motion, but without objection the case proceeded to verdict, a new trial will not be granted because the continuance was thus refused.

2. There was no error in excluding the answer to a question relating to character, the question itself not being in proper legal form.   Had it been otherwise, this court could not have considered the point thus sought to be made, because the ground of the motion does not state what the witness would have answered had he been permitted.

3. Such conversation and conduct of the parties as are properly parts of the res gestæ of the homicide may lawfully go to the jury in a dying declaration made by the deceased.

4. When in a prosecution for a homicide dying declarations are sought to be admitted, the judge must first determine from preliminary evidence whether prima facie they are competent as such, and were made under circumstances entitling them to admission ; but, having been admitted, it is for the jury to finally pass on the question whether or not such declarations of the deceased were conscious utterances in the apprehension and immediate prospect of death. A charge which does not so instruct the jury, but may be so construed as that the jury will infer that they must take such admissions as a part of the evidence in the case, without a qualification that they must finally determine whether such declarations were made and, if they were, at a time when the deceased was in the article of death and conscious of his condition, was error.

5. No other errors requiring a reversal of the judgment appear in the motion for new trial.

Argued October 3,—Decided October 27, 1899.

Indictment for voluntary manslaughter. Before Judge Spence. Miller superior court. April term, 1899.

*W. D. Sheffield, C. C. Bush,* and *R. H. Powell & Son,* for plaintiff in error. *John R. Irwin,* solicitor-general, by *King & Anderson* and *Lewis W. Thomas,* contra.

LITTLE, J. Bush was indicted for the offense of voluntary manslaughter, and found guilty. He made a motion for a new trial, which was refused, and he excepted.

1. One of the assignments of error is that the court refused to continue the case on the showing made by the accused. This showing was based on the absence of four witnesses. It does not satisfactorily appear, by the evidence submitted on the motion to continue, that two of the witnesses had been subpœnaed; the other two had, and at the conclusion of the evidence on the motion the court stated that he refused the motion as to the two witnesses who it appeared had not been subpœnaed; that the other two witnesses, Spooner and Thompson had been sent for by the court, and that if they should be brought in after the case had been ruled to trial he would allow them to be sworn at any time; that if they did not come, a motion from the defendant, even after the case had gone to trial, to continue it on account of their absence, would be entertained. Before the consideration of the case was concluded, the witness Spooner was brought into court and sworn.

The officer who had been sent for Thompson returned and stated that he could not be found. No further motion was made by counsel for defendant to continue on the ground of the absence of Thompson, and, without any further reference to the question of continuance, the case proceeded to verdict.

It must be conceded that the action of the court in conditionally refusing the motion to continue was irregular. Very much the better practice would have been to postpone the trial of the case until the two witnesses Spooner and Thompson had been sent for, and failing to respond, the judge should have then passed absolutely upon the motion submitted. It was not shown that the other two witnesses had been subpoenaed, and of course there should not have been any continuance on account of their absence. When the judge in response to the motion to continue for the absence of the two subpoenaed witnesses stated that he would send for the witnesses, and if they were not brought into court that he would then entertain a motion from the defendant to continue, it was such an intimation that he would continue the case unless he was able to procure the attendance of the witnesses as required the counsel, when it was ascertained that Thompson could not be found, to renew the motion if they then desired to continue. No further suggestion in relation to continuance was made. It must therefore be assumed that if, under the circumstances stated, the motion had been renewed, the court would have continued the case, and that the judge was justified in supposing, in the absence of any renewal of the motion, that the defendant was satisfied to proceed, having procured the testimony of one of the witnesses. While this manner of passing on a motion to continue is irregular and unsatisfactory, it does not afford any ground for a reversal of the judgment.

2. It is further complained that the court sustained an objection to a question propounded in the following form: "Mr. Corbett [deceased] was a man of violent disposition, wasn't he?" We suppose that this question was intended to elicit information that the deceased bore the character of being a man of a violent disposition. There are several objections to the question as propounded. One sufficient one is that it was

not in proper and legal form. For aught that appears in this ground, the witness had not testified that he knew the character of the deceased, nor does the ground of the motion state what answer the witness would have made to a proper question on this subject. Under these circumstances, the court committed no error in refusing to admit the evidence. See *Powell* v. *State*, 101 *Ga.* 9.

3. It is complained in another ground of the motion, that the court committed error in admitting as evidence to the jury certain statements made by the deceased and offered as dying declarations. These statements were that at the schoolhouse Bush had cursed him for a G— d— son of a b—, and told him that he was going to kill him. To the admission of this evidence defendant objected on the ground that dying declarations could only be admitted to prove who was the slayer, and the res gestæ of the homicide. Dying declarations of the deceased, as to the cause of the death and the person who killed him, are admissible in evidence in a prosecution for the homicide. Penal Code, § 1000. In the case of *Wilkerson* v. *State*, 91 *Ga.* 729, Mr. Justice Lumpkin, delivering the opinion of the court, said: "In our opinion, the words 'as to the cause of his death' are sufficiently broad to include all relevant facts embraced in the *res gestæ* of the homicide. The object of the law in permitting such declarations to be received would be defeated if they were confined to the immediate physical cause of the death, and the name of the slayer. The conversation or conduct of the parties at and immediately preceding the homicide, and constituting the *res gestæ* of the occurrence, such as a witness would be permitted to relate, may, we think, be proved by the dying declarations of the person killed." And in the case of *White* v. *State*, 100 *Ga.* 659, this construction of what might be received as dying declarations was approvingly referred to. So that we may now consider it as established, for the reason stated by Mr. Justice Lumpkin, that all relevant statements which are a part of the res gestæ of a homicide are admissible as dying declarations. The question then arises whether the statements objected to were so nearly connected with the act of homicide as to be free from suspicion of device or afterthought. Penal

Code, § 998. It is a difficult matter in many cases to determine whether the declarations are so nearly connected with an act as to become part of the res gestæ. In the case of *Stiles* v. *State,* 57 *Ga.* 183, this court held that where a difficulty commenced at one groggery and terminated at another, the same night in the same village, all that transpired at both groggeries is admissible as res gestæ, though some interval of time intervened between the beginning and end of the rencounter. And it was said in the case of *Mitchum,* 11 *Ga.* 615, that declarations, to be contemporaneous with the act, are not required to be precisely concurrent in point of time. If the declarations spring out of the transaction—if they elucidate it, and if they are made at a time so near to it as to preclude reasonably the idea of deliberate design, they are to be regarded as contemporaneous. In the case above cited, Nisbet, J., delivering the opinion, said, referring to what was the res gestæ, that: "No definition could be found so comprehensive as to embrace all cases; hence it is left to the sound discretion of the courts what they shall admit to the jury along with the main fact, as parts of the res gestæ." Whether the statements made in the declaration which was admitted as a dying declaration as to what the accused said and did were parts of the res gestæ of the homicide must be determined under the above rules. If they were, then, under the authority of the *Wilkerson* case, supra, they could properly be included in a dying declaration. If they were not, then, under the law governing the admission of dying declarations, they could not. We find it difficult as a matter of law to determine whether they were or not, because of the want of sufficient information. The interval of time which elasped between the altercation, if there was any, which occurred at the window of the schoolhouse, and the homicide, does not appear with sufficient certainty to enable us to decide; and as a new trial is to be had on another ground, we refrain at this time from expressing an opinion on that point. If in another trial this time is shown, together with the actions of each of the parties following until the homicide, we will be better able to judge, if it should come to us for decision; and from what has been said above, if occasion requires, it can readily be

determined whether the statements sought to be admitted are a part of the res gestæ and therefore admissible as a part of the act of homicide.   We are not unmindful that a sound rule governing the admission of evidence requires that dying declarations should be received with caution.   Nevertheless, under the rule promulgated, they are properly admissible when they come within the terms prescribed.

4. Another ground of the motion assigns error in admitting in evidence the alleged dying declarations, without submitting to the jury for their determination the question as to whether such declarations were actually made, whether they were made in articulo mortis, and whether the deceased was conscious of his condition at the time they were made.   In connection with this ground of the motion, the plaintiff in error sets out a portion of the charge of the judge, as follows: "The dying declarations of any man, when they are made in article of death, when he is conscious of his condition, can go to the jury as evidence, and should be considered with all the other evidence in the case in determining what the truth of the case is, that being the peculiar province of the jury, and then take the law from the court, and apply it to that state of facts as you find them, and then let that be the basis of your verdict."   From this charge the conclusion might be drawn by the jury that, inasmuch as the judge had admitted the declarations, it was their duty to consider the same as evidence, and to weigh them with the other facts in arriving at their verdict.   It might also be inferred by the jury that, inasmuch as the evidence had been admitted, it was not necessary for them, in order to determine their value, to first find whether the declarations were in fact made in the article of death, and that the deceased was conscious of his condition at the time they were made.   The ground of the motion is properly certified to by the presiding judge, and we find in the charge no reference to the duty of the jury to consider whether the declarations were made when the party was in a dying condition and whether he knew that fact. We are quite sure that this necessary and important condition was momentarily overlooked by the presiding judge, but the failure to so instruct might have had the effect of allowing the

jury to consider the dying declarations as evidence without determining its value by the ascertainment of these preliminary facts. Under the evidence in the record, there was no error in admitting the dying declarations to be considered by the jury. The rule is, that this character of evidence can not be admitted until the presiding judge is satisfied, from the preliminary examination, that the requirements of the statute have, prima facie, been met. If they have, the evidence goes to the jury primarily for their determination whether the declarations were made, and if so, were they made at a time and under such circumstances as make them evidence? The jury are at liberty to weigh all the circumstances under which the declarations were made, including those already proved to the judge, and to give the testimony such credit as upon the whole they may think it deserves. Following this rule, it was held in the case of *Dumas* v. *State*, 62 *Ga.* 58, that: "The court must judge of the preliminary evidence in the first instance, and, deeming it prima facie sufficient, should admit the declarations to the jury, instructing the jury afterwards to pass finally for themselves on the question, whether or not the declarations were conscious utterances in the apprehension and immediate prospect of death." To the same effect, see *Mitchell* v. *State*, 71 *Ga.* 128; also *Varnedoe* v. *State*, 75 *Ga.* 181. We must rule, therefore, that the charge set out in this ground of the motion for a new trial, when applied to the alleged dying declarations which had been admitted in evidence, standing by itself, was error. As an abstract proposition of law, the charge was correct; but in connection with such charge the jury should have been instructed that, notwithstanding the admission by the court of the alleged dying declarations on the preliminary evidence submitted, yet it was for the jury, in passing upon the value and weight of this evidence, to determine whether the deceased was in articulo mortis and conscious of his condition at the time they were made. If they should be of the opinion that he was in the article of death when they were made, but not conscious of his condition, then, notwithstanding the admission, they should reject the evidence as dying declarations.

5. A number of assignments of error, other than as above indicated, are set out in the motion. A careful consideration fails to disclose any material error, or one authorizing the grant of a new trial, other than above appears; and only because of the failure of the judge to properly instruct the jury in reference to the consideration of dying declarations, as above indicated, is a new trial awarded.

*Judgment reversed.　All the Justices concurring.*