## Swain *v.* The State.

Gilbert, J. 1. The court permitted a witness for the State to testify that the defendant, George Swain, drove up to the scene of the killing, and his wife said "La, yonder is George!" "George Swain came to the gate and asked me where was his wife. When he asked me where was his wife she told me to tell him she was not there, that she was up at my father's, Mr. Beecher's." This evidence was admissible as a part

of the res gestæ, as against the objections that it was hearsay, not spoken in the presence of the defendant, and that it was the saying of the defendant's wife, who was not a competent witness as against the accused. *Marcus* v. *State*, 149 *Ga.* 209 (7), 210 (99 S. E. 614), and authorities cited; 1 Wharton's Crim. Ev. 511; and see *Woolfolk* v. *State*, 85 *Ga.* 101, 102 (11 S. E. 814).

2. The court permitted a witness for the State to testify that "Nick Swain [jointly indicted with the accused, but not on trial] when the shooting was taking place came up near the cotton-house and hallooed 'Pour it into him;' hallooed this all the time the shooting was taking place." This evidence was not inadmissible on the ground "that Nick Swain was not on trial, and that anything said or done by Nick Swain at the time referred to by the witness was inadmissible as evidence as against the movant;" the same being res gestæ declarations.

3. The court permitted a witness for the State to testify as follows: "I know that George Swain separated from his wife. They were separated at the time Dock Harris was killed. They separated about three weeks before Dock Harris was killed by George Swain. They were at my home when they separated. I did not hear them say much. Carrie [movant's wife] asked me to lend her a dress to wear to her brother's funeral, as she did not have one of her own to wear, except a dirty one. She had a coat suit, and George made her pull it off, and George told her that she could go, that they couldn't get along together, that they couldn't live together, and she could just go and do the best she could and he would do the same; and that was all brought about because she wanted to go to her brother's funeral. He took the coat suit and left her. I let her have shoes and hat also. After the funeral was over, she went back to her father's and continued to live there until her father was killed. He made her take off her coat suit, shoes, and hat." This evidence was admissible to ascertain motive and explain conduct of the accused (Penal Code, § 1023), and was not inadmissible on the ground that the wife could not testify against the husband. *Marcus* v. *State*, supra.

4. When, in a prosecution for homicide, dying declarations are sought to be admitted, the court must first determine from preliminary evidence whether prima facie they are competent as such and were made under circumstances entitling them to admission. There being evidence that the deceased was "conscious that he was going to die," that he said "he was killed," the attending physician having sworn that he was in the article of death, and that he did die the next morning after having been shot, the court did not err in admitting the evidence. *Washington* v. *State*, 137 *Ga.* 218, 222 (73 S. E. 512).

5. After having admitted the dying declarations referred to in the next preceding headnote, it was for the jury to finally pass on the question whether or not such declarations of the deceased were actually made and were conscious utterances in the apprehension and immediate prospect of death. A charge which did not so instruct the jury but may be so construed that the jury might infer that they must take such declarations as evidence in the case, without a qualification that they must finally determine whether such declarations were made, and,

if so, whether they were made at a time when the deceased was in the article of death and conscious of his condition, was error. The court having failed to so instruct the jury, the error requires the grant of a new trial. *Bush* v. *State,* 109 *Ga.* 120 (4), 125 (34 S. E. 298), and authorities cited.

6. The remaining assignments of error are without merit.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*

No. 1486.   December 12, 1919.

Indictment for murder. Before Judge Sheppard. Tattnall superior court. April 29, 1919.

George and Nick Swain were indicted for the murder of Dock Harris. Upon the trial of George Swain the evidence showed that he had married the daughter of the deceased surreptitiously and against the wishes of the latter. The accused and his wife had been separated for two or three weeks, the latter having gone to the home of her father. The accused went there and asked for his wife, and was told by another person, at the instance of the wife, that she was not there. The deceased was eating dinner, and was told that the accused was at the gate. The deceased went to the front door, and said to the accused, "Haven't I told you not to come here?" The State's evidence shows that the accused immediately shot at the deceased twice, after which both parties fired numerous shots; the deceased returning to his room, followed by the accused, who drew a second pistol; whereupon the deceased procured his rifle; the accused then retired from the premises, and while doing so was shot at again by the deceased with the rifle. The deceased fell, saying that he was killed, and died the next morning. While mortally wounded and conscious that he was in a dying condition he made declarations inculpating the accused and detailing threats that he had received from the accused, and stated that the accused had waylaid the road, and that when the accused appeared at his gate he asked him what he was doing there, and the accused made no reply but began to shoot, and that the first shot hit him. There was evidence that the first shot killed the deceased. The defendant's evidence tended to show that when he appeared at the gate of the deceased and the latter appeared at his door, the firing simultaneously began. The defendant, in his statement to the jury, claimed that the deceased first began the firing, and that he had acted in self-defense. The jury returned a verdict of guilty, recommending life imprisonment. The defend-

ant filed a motion for new trial, which was overruled, and he excepted.

*A. S. Way* and *H. H. Elders*, for plaintiff in error.

*Clifford Walker, attorney-general, J. Saxton Daniel, solicitor-general,* and *M. C. Bennet*, contra.