## OVERBY *v.* THE STATE.

No. 11612. NOVEMBER 12, 1936.

W. E. *Mann* and W. G. *Mann,* for plaintiff in error.

*M. J. Yeomans, attorney-general, John C. Mitchell, solicitor-general, B. D. Murphy,* and *E. J. Clower,* contra.

GILBERT, Justice. ■ Movant complains that the court erred in charging the jury as follows: "I charge you that there are three verdicts that you may write in this case: First, we, the jury, find the defendant guilty; and if you stop there, the penalty will be death. Or, second, we, the jury, find the defendant guilty and recommend mercy, in which event the punishment would be life imprisonment. Or, we, the jury, find the defendant not guilty." The criticisms are that the charge "was not sound as an abstract principle of law;" that the charge was argumentative in that it instructed the jury that no less offense was involved than murder, that it was therefore confusing and misleading to the jury, and that it took from the consideration of the jury the lesser offenses of involuntary and voluntary manslaughter. First it should be stated that the contention that the charge was argumentative is without merit. It obviously was neither confusing

nor misleading. The only ground upon which the charge could be said to be "not sound as an abstract principle of law" is that one or both of the grades of manslaughter was involved.

(1) The law of voluntary manslaughter was not involved either under the evidence or under the statement of the accused. That is true for the reason that there is nothing whatever to be found in the evidence or in the statement which would authorize a finding that the accused killed the deceased without malice, or that the deceased was killed under any of the principles of voluntary manslaughter as defined in the Code, § 26-1007. The evidence for the State makes a clear case of intentional killing with malice aforethought. Under the State's evidence the deliberate intention to kill is shown by direct evidence. The accused declared just before the fatal stabbing, at a time so near the actual killing as to fall within the res gestæ, and while under the influence of intoxicating liquor, that he was "pretty bad," that he was "the meanest guy in town," and that he would "kill somebody" that night. He asked the deceased, "Don't you believe I will cut your head off?" The deceased replied, "Yes, I believe it." The accused "then raised his hand and struck the deceased." The deceased received his mortal wound and died before a doctor could reach him. Neither the State's evidence nor that of the accused shows that the deceased did anything to the accused. There were two theories: (a) Death by accident—verdict, not guilty. (b) Malice implied from an abandoned and malignant heart—verdict, guilty of murder with or without recommendation.

(2) The law of involuntary manslaughter is not involved either under the evidence or under the statement of the accused. Nowhere is it suggested that the accused killed the deceased without any intention to do so. That is a vital element of involuntary manslaughter. Under the evidence for the State it was a plain case of murder. Under the statement of the accused he was entirely guiltless. He insisted that he did not kill the deceased intentionally or otherwise; that there was no ill feeling between them; that no altercation between them had occurred; that the deceased was accidentally killed in a tussel with a third party, Sissom, struggling over a bottle of whisky while Sissom was endeavoring to open the bottle with a knife. Clearly the only construction possible under the statement of the accused is that the

scuffle over the whisky was a friendly one in which the accused was not a participant. If the statement contains the truth of the transaction, the deceased came to his death from an accidental stab with a knife in the hands of Sissom, and the accused would be guilty of no crime whatever. The jury found against the contention of the accused. There is no complaint that the court refused to instruct the jury on the law of death from accident. It follows that the court did not err in restricting the jury to one of three verdicts, to wit, guilty, guilty with a recommendation of life imprisonment, or not guilty.

Movant insists that under the principles ruled in *Wrye* v. *State*, 99 *Ga.* 34 (25 S. E. 610), it was the duty of the court to submit to the jury the law of involuntary manslaughter, and that the court's refusal to do so was error. The request was in the following language: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act which probably might produce such a consequence, in an unlawful manner." The request is not accurate, but that may be waived as an inadvertent error in copying the request. The facts in the *Wrye* case were plainly different from the facts in this case. In the *Wrye* case there was a stab in the left breast and one hand was cut through the fleshy part. The deceased died "within a few days" from the wound. The defendant stated that the deceased, without provocation, made a violent attack upon him on the public highway, and he, being old and feeble, was unable otherwise to resist the violent attack, and that he stabbed the deceased with no intention to kill him. In this case neither the evidence nor the statement of the accused shows any attack on the accused by the deceased, and no offensive conduct whatever. The stab was in the neck, a vital portion of the body, and death ensued almost immediately. The defendant had been carrying a knife in his hand during the night of the homicide, and was heard to make several remarks with reference to killing some one, and of his general character for violence. It is insisted that no description of the knife with which the wound was inflicted is in evidence, and that there was no description of the character of the wound. Such evidence as that just mentioned is material in cases where applicable to show intent, and whether or not the killing was done with or without malice. Where one

stabs another in a vital portion of the body, and the evidence clearly shows an expressed intention to kill, and malice, it is immaterial whether the knife or the wound is described. Malice is implied from an intentional and unlawful killing, and is presumed, unless the evidence proving the homicide also shows mitigation or justification, or such mitigation or justification is shown by the accused. Moreover, the facts of this case demonstrate that the knife-blade was of sufficient length to reach a vital point. For the purpose of showing whether it was a weapon likely to produce death it was useless to introduce the knife before the jury or to describe it: The knife was not only a deadly weapon, but actually killed a human being, and that very quickly. For the same reason it was unnecessary to show a description of the wound. A stiletto is considered a very deadly weapon, and yet it is not likely to leave much of a surface indication of its deadly character. The intention to kill and the malice are shown by direct evidence. In *Turner* v. *State, 57 Ga.* 107, 108, the court dealt with a case where the accused had been convicted of the offense of assault with intent to murder. Where the wound does not produce death, there is no presumption from the nature of the weapon of an intent to kill. It was argued in that case that the intention to kill was not shown, because there was "no proof about the knife." This court replied: "We think that the proof was very positive, if circumstantial. It felt like a knife when it cut the girl's throat who was assaulted; it left a mark like a knife would have done. In the absence of proof to the contrary the jury thought from this evidence that the instrument was a knife, and that it was likely to produce death, and came near doing it. We incline to think that they thought right." The court upheld the judgment refusing a new trial. It is well settled that murder may be committed without the use of any weapon whatever, as by the administration of poison, by choking, by drowning, and in numerous other ways. To uphold the contention in the present case and to set aside this verdict would be to upset well-settled principles of law.

■ The second headnote is not elaborated.

■ Movant contends that the court erred in refusing to grant a new trial on the ground of newly discovered evidence. Grounds for new trial based upon newly discovered evidence are not favored by the courts. *Ivey* v. *State, 154 Ga.* 63 (5) (113 S. E. 175).

"Alleged newly discovered evidence unsupported by the required affidavits of the movant and his counsel (Civil Code, §§ 6085, 6086 [1933, §§ 70-204, 70-205]) is no ground for a new trial." *Lamar* v. *State,* 153 *Ga.* 216 (4) (111 S. E. 914). This ground wholly fails to comply with the requirements of the Code with respect to supporting affidavits. "If the newly discovered evidence is that of witnesses, affidavits as to their residence, associates, means of knowledge, character, and credibility must be adduced." Code, § 70-205. "An affidavit in support of the witness upon whose newly discovered evidence a new trial is sought must give the names of his associates, a statement that he keeps good company not being sufficient to meet this requirement, which is necessary to enable the prosecution to make a counter-showing; and where such affidavit does not comply with this requirement, the trial judge does not abuse his discretion by refusing to grant a new trial on this ground." *Ivey* v. *State, Lamar* v. *State,* supra. It is not a compliance with the statute for counsel to make affidavit that the alleged newly discovered evidence was unknown to them until after the trial. The provision of the Code imperatively requires a compliance therewith. *Dekle* v. *State,* 160 *Ga.* 830 (129 S. E. 102).

██ The fourth and fifth headnotes are not elaborated.

*Judgment affirmed. All the Justices concur, except* RUSSELL, C. J., and ATKINSON, J., who dissent from the ruling that voluntary manslaughter was not involved.