ALLEN *v.* THE STATE.

No. 12548. OCTOBER 11, 1938. REHEARING DENIED NOVEMBER 23, 1938.

*Jule Felton,* for plaintiff in error.

*M. J. Yeomans, attorney-general, E. L. Forrester, solicitor-general, E. J. Clower, E. G. Arnall,* and *Jared I. Bull,* contra.

GRICE, Justice. Arnold E. Allen was indicted for the offense of murder. On the trial the jury returned a verdict of guilty, without a recommendation of mercy. The deceased was the defendant's mother, with whom he lived. There was evidence to the following effect: The deceased was seen by several persons about four o'clock in the afternoon of March 22, 1938, in a condition which indicated that she had been horribly whipped, beaten, choked, and wounded about the head and face with some blunt instrument. While in that condition she was walking near her home, holding to a clothesline, and then fell on the corner of a neighbor's lawn. There was a hole in the side of her head, made with a blunt instrument, such as a guard on a mowing machine or a dull screwdriver; the torn place on the side of her face was about an inch and a half deep and two or three inches long. A nurse testified that when she first saw the condition of the deceased at the hospital she formed the opinion that her injuries were fatal; and a doctor who attended her at the hospital said he considered her mortally wounded. She lived from March 22 to March 30. She was taken to the hospital on the night of March 22, and stated then and afterward that her son, the defendant, had beaten her because she would not give him her pension money. She said to her attendants at the hospital that she was going to die. The defendant fled after the injuries were inflicted; spent the first night in a barn several miles away. He admitted to the sheriff and two policemen, at different times, that he slapped his mother and left her on the floor of the kitchen. He introduced no evidence at the trial. In his statement to the jury he did not deny committing the acts charged to him. This written statement, which he read to the jury, contained the following: "There is too little left of me now to add a falsehood. I have to admit with shame that at times I have been given to the excessive use of strong drink. Life has not been a bed of roses with me. I have had a lot of trouble and plenty of weaknesses. My refuge to drink was wrong, but I was either too weak or saw it too late. At times it has destroyed all my responsible faculties. I can truthfully say to you that my poor mother loved me to the last extent of her ability, and would have died for me as they say she has and did. I reciprocated this love

to the fullest when I was in my right mind. Before this time it has been said I was brutal to her when drunk. I never was when I was at myself at all. If I added a feather's weight to the hurt and death of my poor mother I do not know it; and if true, it was after three-weeks spree, which wrecked my nervous system and rendered me crazy and mad." He did not deny having made certain incriminatory statements to the sheriff and two policemen.

■ The newly discovered evidence tended to disprove important portions of the testimony of the witness Mrs. Darby. Aside from the fact that it is largely or entirely opinionative, newly discovered evidence that is merely impeaching in character affords no legal reason for the grant of a new trial. Among the numerous authorities so holding are *Moreland* v. *State,* 134 *Ga.* 268 (67 S. E. 804); *Bass* v. *State,* 154 *Ga.* 112, 115 (113 S. E. 524); *Davis* v. *State,* 175 *Ga.* 356, 359 (165 S. E. 56); *Aiken* v. *State,* 176 *Ga.* 338, 343 (168 S. E. 34).

■ The charge complained of in the fifth ground of the motion was in all material respects the same as that shown in *Haden* v. *State,* 176 *Ga.* 304, 310 (9) (168 S. E. 272). In that case the following charge was complained of: "Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness was occasioned by the fraud, artifice, or contrivance of another person for the purpose of having a crime perpetrated." The court held that the instruction was not erroneous, on any of several grounds, among them that it withdrew from the jury the right to have the jury consider the drunken condition of the accused as affecting motive and intent, and amounted to a direction that the jury could not consider the intoxicated condition of the defendant for any purpose, even upon the question of a recommendation for mercy, should the jury find the defendant guilty of the offense as charged. See *Overby* v. *State,* 183 *Ga.* 353 (188 S. E. 520).

■ The basis of the contention made in ground 6 of the motion is that certain witnesses testified that the defendant, in reply to a question as to why he struck his mother, the deceased, replied that she refused to cook for him, that this was in the nature of a confession, and that the court, without request, should have charged the law of confessions as found in the Code, § 38-411. There is no merit in this ground, for more than one reason. In the first place, the omission to charge on the law of confessions, in the absence of

a timely request, where there is sufficient evidence, as in the instant case, to sustain the conviction outside of the confession, is not error. *Sellers* v. *State,* 99 *Ga.* 212 (25 S. E. 178); *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36). In the second place, the statement of the accused did not amount to a confession. "A confession is a voluntary statement made by a person charged with the commission of a crime, wherein he acknowledges himself to be guilty of the offense charged;" and "unless the statement of the defendant is broad enough to comprehend every essential element necessary to make out the case against him, it can not be said to be an admission of guilt." *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21). There is a wide distinction between an inculpatory admission and a confession, and it has been held to be error requiring a new trial if the court charges on the law of confessions when the evidence shows only inculpatory admissions. *Clarke* v. *State,* 165 *Ga.* 326 (140 S. E. 889); *Powers* v. *State,* 172 *Ga.* 1 (157 S. E. 195).

■ There is in the record no suggestion of a mutual combat, or of an actual assault upon the accused, or of any attempt by the deceased to commit a serious personal injury on the accused, or other equivalent circumstances to justify the excitement of passion; and hence it was not erroneous to fail to charge on the law of voluntary manslaughter. Merely that a killing is done in passion is not sufficient to make the offense voluntary manslaughter. The existence of the passion must be justified. Code, § 26-1007. "Passion will only mitigate when there has been 'some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied.' Simply to prove that a man was drunk and killed another in passion would not reduce the crime from murder to manslaughter." *Vann* v. *State,* 83 *Ga.* 44, 53 (9 S. E. 945).

■ The ruling of the court in refusing to declare a mistrial was not erroneous. Having stated to the jury in his argument that they had the high prerogative as a matter of right to recommend mercy, what cause has the prisoner to complain that the prosecuting officer also said that "the lawmakers who wrote that statute knew that the jury would be men who before making such recommendation would look to the facts and circumstances of the case they

were trying, before such recommendation would be made"? Is not that the truth? Did the lawmakers intend that a jury should capriciously exercise that high prerogative? Did they not intend that they would. look to the facts and circumstances of the case they were trying, before such recommendation would be made? What was the harm in the solicitor-general so reminding the jury? There was nothing in his argument that circumscribed or restricted the jury in respect to their right to recommend. There was nothing in his argument to negative the idea that they could recommend as a matter of grace. He had the right to urge the jury to render a verdict of guilty without a recommendation. *Bailey* v. *State,* 153 *Ga.* 413 (112 S. E. 453); *Johnson* v. *State,* 154 *Ga.* 529 (114 S. E. 713). That portion of his argument to which exception is taken did make a reference to the jury's looking to the facts and circumstances of the case before making a recommendation to mercy. *Manchester* v. *State,* 171 *Ga.* 121 (155 S. E. 11), was a murder case. The court there charged the jury as follows: "You try the case, and whatever you think is right under the law after considering the case you do what you think right in the matter of fixing the punishment in the event of a verdict of guilty. I can not tell or state to you what you ought to do." This charge was excepted to on the ground that it limited the jury to their judgment of what is right under the law as to fixing punishment, and that it withdrew from the jury's consideration the fact that the jury had a right, as a matter of grace, to recommend mercy without any consideration of what the law is. This court held that the criticism of the charge was not well founded. See *Withrow* v. *State,* 136 *Ga.* 337 (4) (71 S. E. 139). *Dupre* v. *State,* 153 *Ga.* 798 (113 S. E. 428), was another capital case. There complaint was made of the following charge to the jury: "You hear the evidence; you are citizens of this county; the jury is supposed to know what ought to be done with reference to fixing the punishment; the court has no suggestion to make to you with reference to that; you may consider what the object of punishment is, consider all of the facts and circumstances of the case, circumstances of mitigation or palliation, or circumstances of aggravation, anything that you think ought to be considered as bearing upon the question of what punishment you should fix." This court held that no error was shown. It is to be observed that whereas in the *Dupre* case the

court instructed the jury that in reference to fixing the punishment they consider all the facts and circumstances of the case, in the case now before us the solicitor-general in his argument practically said to the jury the same thing. The court correctly overruled the motion for mistrial.

The ground of the motion based on the fact that the court, at the request of the jury and over the objection of counsel for the prisoner, had the stenographer to read over to the jury, after they had deliberated for some time, the evidence of a witness for the State, is without merit. The practice here complained of has by this court been approved. *Green* v. *State*, 122 *Ga.* 169 (50 S. E. 53), where the previous cases were cited and discussed. See also *Compton* v. *State*, 179 *Ga.* 560 (176 S. E. 764). That the testimony so read was that of the most important of the State's witnesses; that it was by the court reporter read very effectively (though not unfairly), that it came after the concluding argument of prisoner's counsel to the jury, that it was read to the jury after they had been deliberating for hours, and they quickly thereafter reached a verdict, may, as contended by counsel for plaintiff in error, be responsible for the jury's verdict without a recommendation; but such considerations can not alter the rule of law supported by the authorities next above referred to.

There is nothing in the record to indicate that it was challenged on the trial that the person later deceased who made statements as to the cause of her death was at the time in the article of death and conscious of her condition. The record is silent as to any objection by the prisoner to the admission of the testimony as to her statements, on the ground that it was not shown that such declarations of the deceased were conscious utterances in the apprehension and immediate prospect of death. The witness who testified to the statement also testified that she was in a dying condition and knew that she was. No one at the trial testified to the contrary. Under these circumstances, should a new trial be granted because the judge nowhere in his charge made any reference to dying declarations, that he nowhere charged the jury that the alleged dying statement was admitted by the court prima facie, and that before they could receive it and act upon it they must believe that it was made by the deceased in the article of death and when she was conscious of her condition? Counsel for plaintiff in

error, in support of his position, cites *Bush* v. *State,* 109 *Ga.* 120 (34 S. E. 298); *Swain* v. *State,* 149 *Ga.* 629 (101 S. E. 539); and *Cooper* v. *State,* 182 *Ga.* 42, 47 (184 S. E. 716, 104 A. L. R. 1309). In the *Bush* and *Swain* cases the judge charged on the law of dying declarations, but charged incorrectly. The decision in the *Cooper* case dealt with the admissibility of the declarations. None of the three cases cited is an authority for the proposition that it is error to fail to charge, without request, that the jury must not consider the declarations of the deceased unless they believe them to have been made by the deceased in the article of death and conscious of her condition. The Court of Appeals of this State, in *Cash* v. *State,* 18 *Ga. App.* 486 (89 S. E. 603), ruled: "It not appearing that there was a timely written request so to charge, the court did not err in failing to instruct the jury that it was for the court in the first instance to determine whether the preliminary proof was sufficient to admit the dying declaration, but that the admission of such dying declaration was not binding on the jury, and was a question of fact to be passed on by it." It was directly ruled in *Miles* v. *State,* 182 *Ga.* 75 (185 S. E. 286), that in the absence of a proper request in writing an omission so to charge is not error. Russell, C. J., and Atkinson, J., dissented in the *Miles* case, but their dissent was apparently not upon this point, but because, as stated in their opinion, "In the facts of this case the intervening time is so great as to require a finding that the declarations were not made while the declarant was in the article of death, within the meaning of the statute." In *Mitchell* v. *State,* 183 *Ga.* 217 (188 S. E. 3), it was ruled: "Without an appropriate request, it was not error to omit an instruction to the jury on the law of dying declarations." The judgment in the *Mitchell* case was reversed on other grounds. Justices Gilbert and Bell dissented, but apparently not on the point now under discussion; and a third justice was absent. Our conclusion is that the court did not err in the ruling here dealt with.

■ Although the general grounds of the motion for new trial were not argued in the brief, we have nevertheless carefully read the evidence. It supports the verdict. The defendant's statement was in effect but an appeal to the jury for mercy. Whether to fix his sentence at life imprisonment, or to impose on him the death penalty was a matter entirely for the jury to determine. The

judge denied the motion for new trial and by that act approved the verdict.

*Judgment affirmed. All the Justices concur, except* Russell, C. J., who dissents on the ground that the court erred in not declaring a mistrial.