## 385.  MOODY *v.* THE STATE.

1. Where, by oversight, inadvertence, or otherwise, the defendant is put on trial upon an indictment alleging the homicide of a living man, and, upon the mistake being discovered, a verdict of not guilty is entered, such acquittal can not be pleaded in defense to another indictment charging the same defendant with the homicide of another person, although it was the intention in the first instance to indict and prosecute for the killing of the person last mentioned, and no other transaction was contemplated, in the original indictment or trial, by the grand jury, the prosecutor, or the State's counsel.

2. The trial judge has the power to correct errors in the stenographic

report of his charge, even after it has been filed as part of the record, under his approval.

3. A new trial will not be granted for refusal to grant a written request to charge, where the request contains an inaccuracy of law, where it is not adjusted to the proof or the defendant's statement, or where it is fairly covered by the general charge.

4. Minor verbal inaccuracies in the charge, not calculated to mislead the jury, do not constrain the grant of a new trial.

5. In the absence of a timely written request, no error can be successfully assigned upon the failure of the judge to charge upon the impeachment of witnesses.

6. While dying declarations should be received with caution, slight preliminary proof will justify the judge in prima facie admitting them, for final submission to the jury.

7. It is proper for the court to instruct the jury that he passes only prima facie upon the admissibility of dying declarations, and that the jury are the judges not only of the weight to be given them, but also as to whether they were made under such circumstances as to be entitled to consideration at all.

8. The credibility of the witnesses is exclusively for the jury.

9. Newly discovered evidence, cumulative or impeaching in its character, does not require the grant of a new trial.

10. A verdict not unsupported by evidence will not be set aside by this court, though the proof of the defendant's guilt may not be altogether satisfactory.

Conviction of manslaughter, from Tattnall superior court—Judge Rawlings. January 1, 1907.

Argued April 22,—Decided May 9, 1907.

*W. T. Burkhalter, H. H. Elders,* for plaintiff in error.

*Alfred Herrington, solicitor-general, L. J. Tippins, W. W. Larsen,* contra.

POWELL, J. 1. We will first dispose of the plea of former acquittal. The defendant had killed O. D. Barnhill. Upon the investigation of this homicide the grand jury, by inadvertence, returned an indictment wherein the person killed was named as M. C. Barnhill. M. C. Barnhill was a witness before the grand jury, and was in life at the time of the trial. The defendant was arraigned upon this indictment, the jury was sworn, and, pending the introduction of evidence, the error was discovered. A verdict of not guilty was entered and a new indictment was returned, charging the murder of O. D. Barnhill. The prosecutor, the State's counsel, and the grand jury were attempting to prosecute and indict in the first case for the same homicide alleged

in the last case. Upon arraignment on the second indictment the defendant entered a special plea of former acquittal, and the facts were conceded to be substantially as above. The court found against the plea. If it were not for the precedent of the Supreme Court decision in *Gully* v. *State,* 116 *Ga.* 527, this state of facts would present a close question. However, the *Gully* case is so closely analogous as to free the question from doubt. Gully committed bigamy by marrying Bessie Shingler. Intending to present for this offense, the grand jury preferred an indictment charging the marriage with Gussie Shingler, a sister of Bessie Shingler. The defendant was acquitted on this indictment, and a new bill was returned, charging the marriage with Bessie Shingler. It was conceded, as in this case, that there was but one offense, and that the wrong name was inserted in the first indictment by inadvertence. The plea was held bad. The meaning of that decision is that if the first indictment be so drawn that no phase of the transaction in question can be investigated under it, there is no jeopardy as to the transaction, although it was the intention of the grand jury and the prosecuting officer that there should be. In this it is distinguished from *Ingram* v. *State,* 124 *Ga.* 448, *Holt* v. *State,* 38 *Ga.* 187, and several other cases of the same tenor.

2. Complaint is made that the court corrected the stenographic transcript of his charge, after having approved it and ordered it filed. No error. *A. & B. Air-Line Ry.* v. *McManus,* ante, 302.

3. The defendant made a timely request in writing that the court give in charge to the jury section 72 of the Penal Code. The court did not give this section in charge literally, but did give in charge all of section 70. We think the latter section covered the issues as fully as they were made by the defendant's statement or evidence. In fact, neither of these sections was applicable under the theory of the defendant's statement, for therein he set up that the killing was altogether accidental, so far as he was concerned with it; and this the court covered fully. Another request was properly refused, because it did not contain a correct principle of law.

4. Error is assigned because the court instructed the jury that if they believed the killing accidental, they would be "authorized" to find the defendant not guilty, the specific criticism being that

the instructions to acquit under these circumstances should have been absolute. If this verbal criticism is well taken (and we are not prepared to say that it is), the error is too trivial to work a reversal.

5. Error is assigned that the court did not, without request, charge upon contradictory statements of the deceased, and upon the impeachment of witnesses. Instructions upon such questions are not compulsory, in the absence of written request. *Cress* v. *State,* 126 *Ga.* 567.

6. The foundation for the submission of the alleged dying declarations to the jury was sufficiently laid. *Young* v. *State,* 114 *Ga.* 850.

7. An excerpt from the judge's charge on the subject of dying declarations is set out, and error is assigned because the court instructed the jury that these declarations were first passed upon by the court prima facie. An examination of the context discloses that the instructions were in accordance with what the Supreme Court said should be charged on this subject, in the case of *Bush* v. *State,* 109 *Ga.* 126.

8. One of the grounds of the motion presents the contention that the testimony of the defendant's witnesses was uncontradicted, and that the jury was bound to give weight to this testimony. The credibility of the witnesses is exclusively for the jury. In this case the testimony of these witnesses was contradicted in many material respects, and an effort was made to impeach them by previous contradictory statements; yet we feel sure that the jury did give weight to their testimony; otherwise the verdict should have been for murder, not for voluntary manslaughter.

9. The last ground is upon newly discovered testimony. The showing in this respect did not come up to the rule. Besides, it was mainly impeaching in its character.

10. Though we have some doubt of the defendant's guilt, yet after a careful and painstaking study of the record we find no reversible error; and the evidence is sufficient to support the verdict, which is approved by an honest and conscientious trial judge.

*Judgment affirmed.*