*Wooten & Hofmayer,* contra.

---

## 1116.   BURCH *v.* THE STATE.

1. An acquittal under an indictment for cattle stealing, in which the animal alleged to have been stolen is improperly described, is a bar to a subsequent prosecution for the same larceny, unless the indictment under which the acquittal occurred was such that it was legally impossible to have investigated the transaction thereunder.

(*a*) The sex of an animal is not a necessary allegation in an indictment for cattle stealing, and, when set forth, stands upon the same footing as any other descriptive attribute which might be alleged.

(*b*) An acquittal under an indictment charging the larceny of a cow is a bar to a subsequent prosecution for the same larceny, in which the animal stolen is described as a steer.

Indictment for larceny, from Dodge superior court—Judge Martin.   March 17, 1908.

Submitted May 5,—Decided May 18, 1908.

*Charles W. Griffin, J. Hal Roberts,* for plaintiff in error.

*E. D. Graham, solicitor-general,* contra.

POWELL, J.   A plea of former jeopardy was filed by the defendant to an indictment charging him with simple larceny,— cattle stealing.   The State traversed the plea, but the facts are practically undisputed.   An indictment was returned charging that the defendant, on the 7th day of October, 1907, "a certain red cow with short horns and marked swallow fork and underbit in one ear and oversquare and underbit in the other, of the personal goods of one A. A. Harrell, executor of W. J. Harrell, deceased, of the value of twelve dollars, unlawfully, wrongfully, and fraudulently did take and carry away with intent to steal the same." Upon this indictment a verdict of not guilty was rendered.   At the same term of the court the defendant was again indicted, the charge being that on the 7th of October, 1907, he "a certain animal of the cattle species, being a male and commonly called a steer, being of red color and marked swallow fork, and underbit in one ear and oversquare and underbit in the other, of the per-

sonal goods of one A. A. Harrell, as executor of the will of W. J. Harrell, deceased, and of the value of eight dollars, unlawfully, wrongfully, and fraudulently did take and carry away, with intent to steal the same." It seems, from the proof taken on the plea in abatement, that the verdict of not guilty under the first indictment came about by reason of the fact that the prosecutor, through inadvertence, in his testimony before the grand jury, described the animal stolen as a cow, when it was a steer. It was the intention of the prosecutor to indict for the same transaction, in both instances. The only animal which had been stolen from him was a steer, and he had not lost a cow of the description charged in the first indictment. The judge submitted the plea to the jury, but in substance instructed them that the first indictment, which was for stealing a cow, would not be a bar to the second indictment, which was for stealing a steer; and under this charge the jury found against the plea; and from his verdict the present writ of error arises.

In the case of *Gully* v. *State,* 116. *Ga.* 530 (42 S. E. 790), the Supreme Court, in holding that in this State, as to pleas of former jeopardy, what is known as the "same-transaction test" prevails, said: "If the evidence offered under the issue formed upon the special plea shows that no other transaction than that sought to be investigated under the second indictment could have properly been the subject of investigation under the first, then an acquittal under the first indictment would be a bar to a prosecution under the second, notwithstanding the fact that there could not have been a conviction under the first indictment for the reason that the proof offered in support of it failed to establish the allegations descriptive of the offense, ordinarily immaterial but which the pleader had made material by averment." In support of this proposition the court cites and discusses the case of *Buhler* v. *State,* 64 *Ga.* 504, and similar cases, in which it is held that an acquittal under an indictment for stealing an animal improperly described will be a bar to a subsequent prosecution under an indictment in which the animal is properly described. In the course of the argument, Justice Cobb, who delivered the opinion on behalf of the court, said: "If it had appeared from the second indictment in the *Buhler* case that the animal alleged to have been stolen was and could not have been the same animal

25

referred to in the first indictment, then of course no proceedings under the first indictment would have affected a prosecution under the second; that is, to take an extreme case, if it had appeared in the first indictment that Buhler was charged with having stolen a cow, and in the second indictment with stealing a bull, then no proceedings had under the first indictment would affect the right of the State to prosecute under the second; and this would be true notwithstanding it appeared from the evidence upon the issue formed upon the special plea setting up former acquittal that the draftsman of the indictment, by mistake, described the animal as a bull when it should have been described as a cow." The example here given would seem to cover the case at bar with exactness, and to justify fully the instructions which the trial judge gave the jury; but, after carefully studying the whole opinion and the conclusions of law announced, we have become convinced that by some oversight the learned Justice, who so seldom was inaccurate, used an inapt illustration. He seems to have overlooked the fact that sex, whatever may be its importance in other relations, has no other function in an indictment for cattle stealing than to be a mere attribute of description, a physical mark of identification, just as weight, brand, color, and other accidentals. The sex of the animal is not a necessary allegation; the statute (Penal Code, §160) merely prescribes that "the indictment shall sufficiently describe the animal falling under the description of cattle . . so that it may be ascertained and identified by the owner." An indictment for cattle stealing, describing the animal stolen as "one red Jersey calf, branded 'D,' being the calf dropped by John Doe's red and white Jersey cow on January 1, 1908," would beyond peradventure be sufficient, although it entirely omits any allegation, either express or implied, as to the sex of the calf. The example given by Justice Cobb assumes that the larceny of an animal which in fact was a bull could not be *investigated* under an indictment charging the larceny of a cow; but this is not necessarily the case; for the sex of the animal stolen may just as easily in theory, though not so frequently in actual practice, be a matter of dispute as the color, flesh marks, ear marks, brands, or any other descriptive attribute. For example, the owner of a female calf who has seen it, but who, for lack of a critical examination, has formed a mistaken opinion as to its sex, might swear, if the calf was stolen,

that it was a bull calf, while his stable boy, who had examined it closer, might testify that it was a heifer; and although the solicitor-general, in drawing the indictment, had used sex as a descriptive term and had alleged that it was a bull calf, the larceny might be investigated under the indictment as drawn; and if the jury should believe the mistaken owner instead of the better-informed stable boy, and should convict the defendant, the conviction could be upheld. Of course, as the animal grows older and the marks of sex become more clearly distinguishable, such a conflict in the testimony becomes less likely to occur; still the mind can conceive of a case in which a dispute might arise in the testimony as to the sex of a full-grown animal. In this sense, the larceny of a bull may be investigated under an indictment charging the larceny of a cow; and it is manifest, from the whole tenor of the decision in the *Gully* case and the authorities there cited, that this is the criterion intended to be established by the court. The investigation in such cases, it is true, can not result in a conviction, unless there is false testimony, either through perjury or mistake; but this is true in every indictment, in any sort of a case, if the defendant in fact happens to be innocent. It will not do to lay down the rule that the defendant must be guilty as charged in the first indictment, before a prosecution thereunder will be a bar to another.

In many States it is held that where the prosecution under the first indictment fails, by reason of a variance between the descriptive terms alleged and those proved, the trial under the first indictment is not a bar to a second; but as Justice Cobb pointed out in the *Gully* case, this is not the rule in Georgia. The established rule in this State is that if the larceny charged in the first indictment (though the subject-matter of the larceny be incorrectly described) is in fact the same transaction as that charged in the second indictment, an acquittal under the former will be a bar to a prosecution under the latter, unless it should appear that it was legally impossible for the larceny in question to have been investigated under the first indictment. The instructions given the jury were erroneous, and the verdict was improper. See also *Moody* v. *State*, 1 *Ga. App.* 774 (58 S. E. 262); *Ingram* v. *State*, 124 *Ga.* 448 (52 S. E. 759), and cases cited.    *Judgment reversed.*