STEPHEN B. BRINKLEY, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Where, upon a trial for murder, the defense was insanity, evidence that the defendant was generally regarded as a man of unsound mind, and that such was his reputation before the commission of the alleged offense, was properly rejected.

2. Requests which are prolix, verbose, confused, and calculated to mislead the jury, should not be given in charge; and more especially should they be refused when they are based upon a view of the case unsupported by the testimony.

3. Where one ground of the motion for a new trial was, that a juror was incompetent, and affidavits were introduced to prove statements made by him before trial, showing great prejudice against the defendant, and the prosecution replied by affidavits to the contrary, including one from the juror himself, the decision of the court below overruling the motion will not be reversed. The judge who presided had a much better opportunity of determining upon the character and credibility of the juror and the witnesses, than a reviewing court can possibly have.

4. The insanity which the law recognizes as an excuse for crime, must be such as dethrones reason, and incapacitates an individual from distinguishing between right and wrong.

Criminal law. Evidence. Insanity. Jury. Charge of Court. Before Judge BUCHANAN. Coweta Superior Court. September Term, 1876.

Reported in the decision.

P. F. SMITH; L. J. GARTRELL; W. F. WRIGHT, for plaintiff in error.

SAMUEL W. HARRIS, solicitor general; THOMAS W. LATHAM; J. B. S. DAVIS, for the state.

Brinkley vs. The State.

Warner, Chief Justice.

The defendant was indicted for the offense of murder, and charged with the unlawful killing of his wife, Elizabeth Brinkley, and upon his trial therefor, was found guilty. The defendant made a motion for a new trial, on the following grounds: First, because the court erred in refusing to allow the defendant to prove by witnesses at the trial, that, before the commission of the alleged offense, he was generally regarded as a man of unsound mind, and that his reputation was that of a person of unsound mind. Second, because the court refused to charge the jury as requested in writing. Third, because it was shown, after the trial, by the affidavits of two persons, Mann and Reid, that Hosea Gray, one of the jurors who tried the case, said, the day before the trial, "they will not take me on the jury, for my mind is made up to hang Brinkley, sane or insane, no matter what the evidence is. I believe Brinkley ought to be hung, and his lawyers know it, and I know they will not take me as a juror; they will not accept of me on the jury, for I will hang him"—and, therefore, said Gray was not an impartial juror; which fact was not known to the defendant or his counsel, until after the trial. Fourth, because the verdict of the jury was contrary to law, against the evidence, and without evidence to support it, and because the verdict was contrary to the weight and preponderance of the evidence upon the plea and question of insanity. The court overruled the motion for a new trial upon all the grounds taken therein, and the defendant excepted.

1. There was no error in the refusal of the court to allow the witnesses to testify at the trial, that the defendant was generally regarded as a man of unsound mind, and that his reputation was that of a person of unsound mind, before the commission of the alleged offense. *Choice vs. The State*, 31 *Ga. Rep.*, 424.

2. There was no error in the refusal of the court to give in charge to the jury the written requests, as set forth in

the record, even if there had been any evidence that the killing of the deceased by the defendant was done under a delusion, and what that delusion was, which the record fails to disclose. The requests were prolix, verbose, confused, and were calculated to mislead the jury, and for that reason they were properly refused. The material portions of the requests (except as to the defendant's killing his wife under a delusion) were given in charge by the court to the jury, in its general charge, in a much more appropriate and legal manner than was contained in the defendant's requests.

3. As to the third ground of the motion, that Hosea Gray was not a competent juror, the rule, as established by this court in *Ray vs. The State* (15 *Ga. Rep.*, 223) is, that upon the showing as made, without any explanation, the defendant would be entitled to a new trial. But the juror may offer explanatory matter in vindication of himself after verdict, and the court will place itself in the position of triors, and if the juror's explanation be such as in its opinion should render him competent, if he were before triors, the court should so determine. The juror, Hosea Gray, in his affidavit, admits that he did make some jesting remark on the subject of Brinkley's case at the hotel the day before he was taken as a juror, in the presence of several gentlemen, one of whom was Orlando McLendon, Esq., "that they will not take me as a juror, or words to that effect," but denies most positively that he made use of the language as stated in the affidavits of Mann and Reid; but, on the contrary, at the time he was taken as a juror, that he had neither formed, nor expressed, any opinion in regard to the guilt or innocence of the defendant, and that he had no prejudice or bias resting on his mind, either for or against the defendant, and that his mind was perfectly impartial between the state and the defendant, and that he made up his verdict in the case solely and exclusively from the evidence. The affidavit of McLendon was also produced and read, in which he corroborates the statement of the juror as to what he said at the hotel about

not taking him as a juror in the case, but did not remember to have heard him use the language as stated by Mann and Reid in their affidavits. The affidavit of ten of the other jurors who tried the case (the absence of the eleventh juror being accounted for) was produced and read, in which they stated that during the trial of the case, the conduct and deportment of Hosea Gray was that of an honest, upright, fair, prudent, and impartial juror. Upon this evidence the court adjudged Hosea Gray to be an impartial juror. The court below had a much better opportunity to judge of the character and credibility of the juror and witnesses than we, as a reviewing court, possibly can have, and, therefore, we will not interfere with its judgment as to the competency of Hosea Gray as a juror for the trial of the defendant.

4. The only remaining ground of the motion to be considered, is whether the verdict is contrary to law and the evidence. There can be no doubt, under the evidence contained in the record, that if the defendant was not insane at the time of the alleged homicide of his wife, that it was an atrocious murder. The record discloses the fact, that owing to the intemperate habits of the defendant, he and his wife had been getting along badly for some time, especially when he was intoxicated ; that he beat and treated her with cruelty, so much so that she determined to separate from him, and sued for a divorce. He then left, and was absent for some time. Returning, as he said, for the purpose of try-ing to effect a compromise with his wife, and get her consent to live with him again, he visited her for that purpose. Upon her refusal to live with him again, he then purchased a knife, went to her place of business, and stabbed her to death. There was a great deal of evidence introduced at the trial, *pro* and *con.*, upon the defendant's insanity, including that of several physicians, there having been sixty odd witnesses examined. If a man has capacity and reason sufficient to enable him to distinguish between right and wrong as to the particular act in question ;

if he has knowledge and consciousness that the act he is doing is wrong and would deserve punishment, he is, in the eye of the law, of sound mind and memory, and the subject of punishment—*Choice vs. The State,* 31 *Ga.* Rep., 424. The insanity which the law recognizes as an excuse for crime, must be such as dethrones reason and incapacitates an individual from distinguishing between right and wrong as to the consequences of his own conduct. Applying this rule to the defendant, in the light of the evidence disclosed in the record before us, we are constrained to say, after a careful and laborious examination of that evidence, that the preponderance thereof is in favor of his sanity at the time of the commission of the offense alleged in the indictment. The question of the defendant's sanity or insanity was fairly submitted to the jury under the evidence, by the court in its charge, as contained in the record, and there being sufficient evidence to sustain the verdict, it was not contrary to law or the evidence.

Let the judgment of the court below be affirmed.