## HUFF *v.* THE STATE.

1. While fear of future violence to life or member will not justify or excuse a witness for testifying falsely, yet it may afford to the jury sufficient explanation to account for such false testimony. Where a witness, therefore, in the trial of one indicted for murder, admits that he swore differently and falsely at the coroner's inquest about the homicide, and did so because his life was threatened by the defendant if he divulged the truth, and he swore under the belief that bodily harm would be done him unless he testified falsely, it was not error in the court to charge the jury as follows: "The court charges you that if his life was threatened, and he acted under the influence of those threats, believing that his life was in peril, so much so as to be unable to freely give the testimony, and he did swear falsely in consequence of these threats, apprehending danger to himself or his life, then, gentlemen, it is a matter for you to consider whether or not it is a sufficient excuse for you to take his testimony."

2. It was not error for the court to charge on the subject of impeaching witnesses as follows: "While testimony may be submitted for the purpose of impeaching a witness, it does not necessarily destroy his testimony, because it is a matter left with you after all to take into consideration and give it what credit you think it entitled to."

3. There was evidence sufficient in this case to authorize the charge complained of upon the subject of conspiracy.

4. It was not error in the court to refuse to allow a witness to testify that there was an indictment against him pending in the court where the accused was being tried.

5. It is within the discretion of the court to allow the State to reopen its case by the introduction of further testimony after the defendant has closed his case, and this discretion was not abused in the present case.

6. A failure by the court to charge the jury the law upon the subject of impeaching witnesses by proof of contradictory statements is not reversible error, where no request for such charge has been made and the attention of the court has not been called to the omission.

7. There being a conflict in the testimony as to the newly discovered evidence tending to show that the jury was not impartial, there was no error in overruling this ground of the motion.

8. As to the guilt of the accused now on trial, the evidence was sufficient to sustain the verdict, and the court did not err in refusing to grant a new trial.

Argued March 21, — Decided May 25, 1898.

Indictment for murder. Before Judge Butt. Harris superior court. October term, 1897.

*A. A. Carson, G. E. Thomas Jr., J. H. Worrill, B. H. Walton* and *C. R. Winchester*, for plaintiff in error.

*J. M. Terrell*, attorney-general, *S. P. Gilbert*, solicitor-general, *R. A. Russell* and *Cameron & Hargett*, contra.

LEWIS, J. Edgar Stripling and Terrell Huff were indicted for the murder of William J. Cornett. They were jointly tried and found guilty, with a recommendation to the mercy of the court; and their motion for a new trial being overruled, they excepted. Since the case reached this court by writ of error, the defendant Stripling escaped jail and is now at large. We therefore do not now decide his case. There were various grounds in the motion for a new trial, many of which evidently related solely to contentions made in behalf of the defendant Stripling, and have no application to the defense set up by the defendant Huff, whose case is now before us for decision. We do not, therefore, consider in this opinion these grounds in the motion, but only such as relate to Huff's case. It appears from the record in the case, that Cornett was assassinated in his bedroom about eleven o'clock at night, as he was in the act of disrobing for the purpose of retiring to bed. There were evidently two persons that did the killing. The tracks of two persons were traced from the direction of Huff's house to Cornett's; two shots were fired, one immediately after the other, the reports which witnesses heard indicating that one was a shotgun and the other a rifle or pistol; two panes of glass were blown out by the shot, one indicating that it was pierced by a bullet, and the other by a number of shot; and two gunshot wounds were found on the body of the deceased. Stripling admitted that he was one of the parties who did the killing, and sought to justify on the ground that the deceased attempted to seduce his sister, had insulted his wife, and had threatened his life. Huff denied that he had anything whatever to do with the homicide. There was no contention in his behalf that he had any excuse or justification to take the life of Cornett. The evidence for the State as against Huff showed that he was in

company with Stripling on the day of the homicide; that he had previously made threats against the life of Cornett; that he left his house that night in company with Stripling, the two stating to a witness on Stripling's premises that their purpose was to kill Cornett that night; that he acknowledged the next day to the same witnesses that the work had been accomplished. There was further testimony that Huff sent word to Stripling, who had gone to Columbus, that if he (Stripling) "hadn't given up, not to give up; that they could not prove it on us." The chief witness for the State had testified before the coroner's inquest that he knew nothing of the homicide, but stated the reason why he then had not divulged the truth was because the defendants had threatened his life if he told on them, and he was fearful that these threats would be carried into effect, and was laboring under the influence of such fears when he was delivering his testimony before the coroner's jury.

1. In. order for duress, or fear produced by threats and menaces, to excuse a witness for testifying falsely, it should appear that he was in danger of bodily harm, or had reasonable cause to believe, and did actually believe, that his life or member was in danger at the time of the rendition of his testimony. Mere apprehension of future injury to himself would not be such duress as would justify the commission of the crime. See Penal Code, § 41; *Burns* v. *State*, 89 Ga. 528 (5). It does not follow, however, from this principle, that he can not give in explanation to the jury such fear of future harm as a reason why he has sworn differently on the previous trial of the case. Such explanation, while it would not justify false swearing, might be sufficient to account to the jury for the false testimony. The charge of the court complained of and embodied in the first headnote is entirely in accord with the principle laid down in *Burns* v. *State*, cited above (6th headnote).

2. When a witness has been successfully impeached by testimony which the jury believes, then of course his evidence should be discredited, unless he is corroborated on some material point, or his credit restored by other testimony, as provided by law in cases of impeachment. But whether or not a witness has been successfully impeached is a question for the

jury. The jury have a right to believe the witness who is attacked rather than the witness brought to impeach him. Hence it does not follow that while testimony may be submitted for the purpose of impeaching a witness, his testimony is thereby necessarily destroyed; and there was therefore no error in the charge embodied in the second headnote. See *Williams* v. *State*, 69 *Ga.* 14; *Powell* v. *State*, 101 *Ga.* 10.

3. Complaint is made in the motion for a new trial, that the court erred in charging the jury on the law of conspiracy, on the ground that there was no evidence authorizing the conclusion that any conspiracy to perpetrate this homicide had been entered into by the defendants. The evidence upon this point was not only circumstantial but positive, and the court did right in instructing the jury as to the effect of the act of one of two conspirators upon the guilt of the other.

4. While one of the State's witnesses was being cross-examined, he was asked by defendants' counsel if there was not then pending against him an indictment in that court. This was objected to by counsel for the State, on the ground that the indictment itself was the highest evidence, the solicitor-general offering to furnish defendants' counsel with such indictment. We think the objection well taken. *Johnson* v. *State*, 48 *Ga.* 116 (3).

5. The principle announced in the fifth headnote is too well established to require any discussion. *Eberhart* v. *State*, 47 *Ga.* 599; *Choice* v. *State*, 31 *Ga.* 465.

6. From an examination of the charge of the court which appears in the record, we find that instructions were given the jury upon the subject of impeaching witnesses. If more specific instructions were desired upon the subject of impeachment in a particular form, requests should have been made by counsel desiring that the jury be given further enlightenment upon the subject. *Bass* v. *State*, 103 *Ga.* 227, and cases cited.

7. A new trial was sought on the ground of newly discovered evidence to the effect that one of the jurors was not impartial and had indicated that his mind was prejudiced against the defendants before he was impaneled to try their case. Affidavits sustaining this motion were met by counter-affidavits

showing that the juror who was thus attacked was not disqualified. There was therefore no abuse of discretion in the court in overruling this ground.

8. The evidence in this case shows threats made by this defendant against the life of the deceased prior to the homicide; his association, under suspicious circumstances, a few hours before the homicide, with the party who unquestionably did the killing; a conspiracy entered into between the two on the night of the killing; tracks of two persons leading from the direction of his house to the home of the deceased; and what was tantamount to a confession that the plot he had entered into with his codefendant had been carried out. All of these acts were corroborated by proof of the corpus delicti. We think the evidence was sufficient to sustain the conclusion that Huff participated in this killing; and if he did, the verdict of guilty was demanded by the evidence, as there is no pretense of justification on his part.

*Judgment affirmed. All the Justices concurring.*