## JONES v. THE STATE.

1. It is not improper for the judge, for the purpose of informing himself as to the probability of the jury being able to agree upon a verdict, to inquire of the individual jurors as to whether there is any likelihood of an agreement.
2. When the judge is informed by some of the jurors that there is no likelihood of an agreement, and by others that it is doubtful whether an agreement can be reached, it is not error requiring the granting of a new trial for the judge to say : " Well, you are sensible men.    I do not wish to force you to make a verdict, but I will stay with you the day.    Retire to your room and see if you can agree upon a verdict."
3. The discretion of the trial judge in refusing to grant a new trial on the ground of newly discovered evidence will not be controlled, when evidence as to part of the facts alleged to have been newly discovered would be inadmissible and the other part is of such a character that it ought not and most probably would not change the result.
4. When passing upon a ground of a motion for a new trial in a criminal case, based upon an alleged expression of opinion of one of the jurors before the trial as to the guilt of the accused, the trial judge occupies the place of a trior, and his finding that the juror was competent will not be reversed, unless under all the facts the discretion of the judge was manifestly abused.
5. There was no error in the charge requiring the granting of a new trial. The evidence, though entirely circumstantial, was sufficient to authorize the verdict, and there was no abuse of discretion in refusing to set aside the finding of the jury.

Argued April 27, — Decided May 30, 1903.

Indictment for murder. Before Judge Fite. Paulding superior court. February 28, 1903.

*J. J. Northcutt, A. J. Camp, W. E. Spinks, M. V. Sanford,* and *J. M. McBride,* for plaintiff in error. *John C. Hart, attorney-general,* and *W. K. Fielder, solicitor-general,* contra.

COBB, J. The accused was convicted of murder, and sentenced to life imprisonment. His motion for a new trial having been overruled, he excepted.

1, 2. It appears from the motion for a new trial that after the jury had been for some time deliberating, the judge sent for them and inquired if they had agreed upon a verdict or were likely to agree. Upon being told that they had not agreed, he then inquired if their differences related to a question of fact or a question of law; and upon being told that the failure to agree arose from a question of fact, the judge responded that in that event he could afford them no assistance. They then retired, and about two hours afterwards were sent for again by the judge, who again inquired if an agreement had been reached, and, if not, whether there was any probability of an agreement. To this inquiry the foreman responded that they were not likely to agree. The judge then propounded to each one of the jurors the following question: "Do you think it likely that you will agree?" Three of the jurors replied that they did not think so, and nine of them responded that it was doubtful about their being able to agree. The judge then said: "Well, you are sensible men. I do not wish to force you to make a verdict, but I will stay with you the day. Retire to your room and see if you can agree upon a verdict." The jury then retired, and about four or five hours afterwards, during the middle of the afternoon, brought in their verdict. This conduct of the judge is assigned as error. It is neither unusual nor improper for a judge, after the jury have had a case under consideration for some time, to call them in and ask whether there is any likelihood of an agreement. Generally this question is addressed to the foreman, who answers for the jury as a whole. There is no impropriety, however, in the judge, if he sees proper, asking each individual juror the question as to whether, in his opinion, an agreement is likely to be reached. The foreman is in no better position than the other members of the jury to express an opinion upon this subject. All of the facts and circumstances

are within the knowledge of each member of the jury, and it may be they will differ in opinion as to the probability of an agreement. It would, of course, be improper for the judge to ask each juror which side he thought ought to prevail, and in this way ascertain how the jury stood upon the questions at issue. The questions propounded by the judge in this case were not of this character, and we see no impropriety in the questions asked. Nor do we think there was any such error as required the granting of a new trial in the judge's stating to the jury that they were sensible men, and, while he did not want to force them to make a verdict, he would stay with them during the day. The judge was holding court out of the county of his residence. It is probable that he had concluded all the business of the session except the case under consideration by the jury. It is true the judge in effect told the jury that he would not discharge them from the consideration of the case until the day was over; but even if he had said this in so many words, it would not have required the granting of a new trial. The time the jury should be held before a mistrial is declared is left entirely to the discretion of the judge. We do not think there was anything in the conduct of the judge which was calculated to so unduly interfere with the deliberations of the jury as to require a reversal of the judgment refusing a new trial. See, in this connection, *White* v. *Fulton*, 68 *Ga.* 512; *Parker* v. *Railway Co.*, 83 *Ga.* 549 (9); *Central Railroad Co.* v. *Neighbors*, 83 *Ga.* 447 (2); *Cochran* v. *State*, 113 *Ga.* 736 (7).

3. The evidence against the accused was entirely circumstantial. He was charged with the murder of a young woman with whom his father was living in a state of adultery. The evidence made a clear case of assassination by somebody. The deceased was killed, while in her house at night, by a shot from a gun, which came through a window near which she was working. The relations between the deceased and the father of the accused had resulted in a separation between his father and mother, and estrangement between his father and all his children. One ground of the motion for a new trial is based upon alleged newly discovered evidence. A sister of the accused made an affidavit that at the time of the homicide her mother was at the house of the affiant, and that on the evening of the homicide, about sundown, she saw her mother give her nephew, one Smith, a young man about twenty years old,

twenty-five dollars.    Smith received the money and went away
toward the place where the deceased lived and where she was killed
that night, carrying with him a double-barreled shotgun.    Smith
at that time was hiding from officers of the law in Alabama, who
were seeking to arrest him on a charge of murdering his brother-in-
law.    The last that affiant saw of him after he received the money
was when he went away toward the house of the deceased, and she
has never heard from him since.    After giving the money to Smith
and after he had gone, affiant's mother turned to her and said:
" Them McDowell women [referring to deceased and her sister] has
broken peace between Son Jones [her husband] and me forever,
and now my people will break peace with them."    Affiant's mother
died before the trial.    It appears from an affidavit of the solicitor-
general that the affiant was present in the court-house during the
trial, and sat by the accused.    If a new trial were granted, this
new witness would not be allowed to testify to the conversation be-
tween her mother and herself; and therefore the question is, whether
a new trial should have been granted simply for the purpose of
allowing the jury to consider evidence that the witness had seen
her mother, on the day of and a short time before the homicide,
pay Smith twenty-five dollars, and that he had left the presence of
the witness and her mother with a double-barreled shotgun, going
in the direction of the house of the deceased.    There was nothing
in the evidence at the trial to connect Smith in any way whatever
with the transaction.    While of course this evidence would have
been admissible as a circumstance to be considered by the jury,
still it was of such a character that it should not, and in all prob-
ability would not, bring about a different result.    It is not to be
presumed that a jury would be influenced by this evidence to bring
in a verdict of acquittal.    In any event, this court can not say that
the judge has abused his discretion in refusing a new trial on this
ground.    Applications for a new trial, based on the ground of newly
discovered evidence, are addressed largely to the discretion of the
trial judge, and in no case will this discretion be controlled by this
court, unless there has been a manifest abuse of it.    See *White* v.
*State*, 100 *Ga.* 659 (5).

4.    One ground of the motion complains that Owens, one of the
jurors, was not a fair and impartial juror, having previously to the
trial stated that he believed that the accused was guilty, that no

one else could have done it, and that it would not do for him to be on the jury. On this ground the judge heard evidence attacking the juror, and also his explanation, as well as evidence as to his conduct in the jury-room and as to his character, and decided that he was a competent juror. In *Vann* v. *State*, 83 *Ga.* 46 (15), it was held that on a motion for a new trial in a criminal case, because of the previously expressed opinion of one of the jurors who rendered the verdict, the circuit judge on this question occupies the position of a trior, and that this court will not undertake to control his discretion, unless it is clear and manifest from the record that he has erred. We can not say that he erred in this case. See, in this connection, the cases cited in *Vann* v. *State*, 83 *Ga.* 60 ; *Buchanan* v. *State*, 24 *Ga.* 286 (2); *Brinkley* v. *State*, 58 *Ga.* 296 (3); *Durham* v. *State*, 70 *Ga.* 265 (12); *Huff* v. *State*, 104 *Ga.* 521 (7); *Allen* v. *State*, 102 *Ga.* 619.

5. The remaining grounds of the motion for a new trial which were insisted on in this court, other than the general grounds, assign error upon different parts of the judge's charge. After a careful examination of these assignments of error, we have reached the conclusion that even if any error was committed in the charges complained of, it was not of such a character as to require the granting of a new trial. Charges on the subject of the prisoner's statement similar to that given by the trial judge in this case have been held not to be erroneous. See *Hackett* v. *State*, 108 *Ga.* 46 (4); *Murray* v. *State*, 85 *Ga.* 381 (2). The evidence, though entirely circumstantial, was sufficient to authorize the verdict. The credibility of the witnesses was for the jury, and we can not say that the judge has abused his discretion in allowing their verdict to stand.

*Judgment affirmed. By five Justices.*