## McLeod v. The State.

Beck, J.  1. The court did not err in refusing to admit testimony in regard to the general character of the prisoner's codefendant for desperation and violence, before there was any proof that the defendant had participated in the commission of the unlawful act with which he was charged, under duress resulting from any threat or menace upon the part of such codefendant, although the defendant relied upon the defense that he had acted under the influence of such duress upon the part of his codefendant as was developed in the statement of the accused, made after the evidence had been rejected.

2. Where evidence, at the time it is offered, is immaterial and irrelevant, and is excluded by the court for that reason, but becomes relevant and material in the light of subsequent developments in the case, it should be reoffered by the party complaining of its exclusion; otherwise he will not be heard to complain that the testimony was repelled.

3. Error is assigned upon the following charge of the court: "I charge you that when a defendant is indicted and charged as a principal in the first degree, and the evidence during the trial of the case shows to the jury beyond a reasonable doubt that he is guilty as a principal in the second degree, the jury would be authorized to find him guilty, as charged in the indictment, of being a principal in the first degree. That is to say, an indictment charging one as a principal in the first degree is supported and sustained by evidence showing him, beyond a reasonable doubt, to be guilty as a principal in the second degree." This was not an incorrect statement of the law, nor misleading.  *Leonard* v. *State,* 77 *Ga.* 764; *Collins* v. *State,* 88 *Ga.* 347; *Morgan* v. *State,* 120 *Ga.* 294; *Bradley* v. *State,* post, 20.

4. If a deadly weapon be used in a homicide, in the usual and natural manner in which such weapons are used, a presumption of intention to kill would arise; and it was not error to give a charge embodying that principle, where the evidence established the fact of the homicide and the use of a deadly weapon in the usual and natural manner in which its use would be fatal.  *Hanvey* v. *State,* 68 *Ga.* 612.

5. While it may be the better practice in criminal cases not to charge the law of preponderance of evidence, still where it appears that this was done by way of illustration, and almost immediately afterwards the court gave the correct rule as to the weight of evidence and the degree of mental conviction required before the jury would be authorized to convict one accused of crime, no harm could have resulted to the defendant; and a new trial will not be granted on this ground.  *Williams* v. *State,* 125 *Ga.* 302.

6. There was no violation by the trial judge of that section of the code which prohibits the judge from expressing or intimating an opinion as to what has or has not been proved, in the use of the following language in his charge: "It is not necessary, in a case of murder, to prove that it was done on the particular day set forth in the indictment. If you find that the crime was committed at any time anterior to the bill of indictment, it would be sufficient without being the specific day set forth in the indictment."

7. In passing upon the ground of a motion for a new trial in a criminal case, based upon an alleged expression of opinion by one of the jurors before the trial, as to the guilt of the accused, the trial judge occupies the place of a trior, and his finding that the juror was competent will not be reversed, unless, under all the facts, the discretion of the judge was manifestly abused. *Jones* v. *State*, 117 *Ga.* 710.

8. No errors of law harmful to the accused are made to appear in any of the other portions of the charge excepted to. There was sufficient evidence to support the verdict, and the judgment refusing a new trial is
        *Affirmed.   Fish, C. J., absent.   The other Justices concur.*

        Submitted November 19, 1906.—Decided April 9, 1907.

Indictment for murder.   Before Judge Martin.   Telfair superior court.   July 19, 1906.

McLeod was indicted jointly with Rawlins for the murder of Joseph Studstill, and was tried separately and convicted. From the evidence it appeared that the deceased, an old man living alone on his farm, was found dead in his house, with wounds on the head, apparently inflicted by an axe; and there were circumstances indicating that he had been robbed. There was evidence that McLeod admitted that he knocked the deceased on the head with an axe and got $1,700; and a written statement made by him while in jail was introduced, in which he said: "Ike Rawlins came to Tobe Lowery's about deep dark and told me that he wanted me to go and help him catch his mule. I went; and when we got to the branch, 200 yards from the house, he got an axe handle out of the bushes, and I asked him what he was going to do with it, and he said he was going to kill old man Joe Studstill. I told him I was going back to the house, but he caught me by the arm and said I had to go with him. I tried to get away, but he toted me across the branch and then he dragged me along and said he would kill me if I did not go. When he got to the house he said he was afraid to hit him with the axe handle, for fear he would holler, and he got the short-handle lightwood axe. He hollered and Uncle Joe asked him who was there, and he said, 'Jim Scarboro.'

He said 'come in.' Ike said, 'No,' he was in a hurry, was cold, but wanted two or three matches. Uncle Joe went and got them, and, when he handed them to Ike, he caught him by the arm and jerked him out of the door, and he fell on some puncheons in front of the door. Ike rolled him off on the ground and hit him on the cheek the first time, and then turned him over and hit him on the back of the head, and I could have heard the skull pop thirty yards. Then he pulled him in the house and in four or five minutes he came out and said he got what was in his pockets. . . I stayed all night with him [Ike Rawlins], and went home to Tobe Lowery's about sunup Sunday morning. Ike told me Tuesday evening there was about $200 of the money. He did not give me a cent of the money." Witnesses for the State testified that McLeod had suggested to one Cravy to rob the deceased; and that McLeod was in company with Rawlins the afternoon before the killing. No testimony was introduced by McLeod, but he made a statement to the jury, similar to his written statement introduced by the State, and insisted that he acted entirely under duress in taking the part he did in the homicide. The grounds of his motion for a new trial, the overruling of which is assigned as error, are sufficiently indicated in the foregoing decision.

*W. A. Wooten, John R. Cooper,* and *D. M. Roberts,* for plaintiff in error. *John C. Hart, attorney-general; E. D. Graham, solicitor-general,* and *Eschol Graham,* contra.