## FUTCH *et al.* v. STATE.

1. Where, on the trial of one indicted for murder, the evidence authorized instructions on the subject of voluntary manslaughter, it was not error for the court to charge in the language of section 65 of the Penal Code of 1910.

2. Where the court, in dealing with the subject of justifiable homicide, correctly charged the law touching the right to defend one's person, against another who manifestly intends or endeavors, by violence or surprise, to commit a felony upon him, and also the law applicable where the circumstances are sufficient to justify the fears of a reasonable man that such a felony is about to be committed, it does not furnish a ground for reversal that the court did not particularize certain circumstances which the jury might consider in that connection, such as threats and menaces.

(*a*) If the defendants desired a charge to the effect that evidence of threats and menaces might be considered in connection with other evidence bearing on the subject of reasonable fears, they should have made a proper request therefor, if the facts warranted the giving of it.

3. Where two persons are jointly indicted for murder, each may be convicted upon evidence showing that he was either the actual perpetrator of the crime, or was present aiding and abetting the other in its commission.

(*a*) Mere presence and participation in the general transaction in which a homicide is committed is not conclusive evidence of consent and concurrence in the perpetration of the crime by a defendant sought to be held responsible for the homicide as aiding and abetting the actual perpetrator, unless such defendant participated in the felonious design of the person killing.

4. When the charge is considered altogether, it is not so in conflict with these principles as to require a reversal.

5. On the trial of one indicted for murder, the testimony of a witness that the deceased was in the habit of carrying concealed weapons was properly excluded, there being no evidence that the accused had any knowledge of that fact. *Warrick* v. *State,* 125 *Ga.* 133 (52 S. E. 1027).

6. While a female witness for the State in a murder case was on the stand, she testified that she was engaged to be married to the person who was killed. For the purpose of impeaching her, she was asked certain questions. She stated that she did not know that she had said that she would like to cut the rope to break the neck of the defendant who shot the deceased, though she might have done so, but that she had said she could pull the rope to break the necks of the defendants (two being indicted). Counsel for the accused announced that the counsel for the State could examine the witness. He remarked, in the presence of the jury, "I agree with you." Counsel for defendants moved for a mistrial. Counsel for the State at once withdrew the remark, and stated that he had no unkind feeling toward the defendants and did not desire to prejudice the case, and earnestly trusted that the jury would not feel that he meant to influence or prejudice them in the slightest degree. The court overruled the motion for a mistrial. *Held,* that this was not error, although the court did not reprimand counsel or give special instructions to the jury on the subject.

7. None of the other grounds of the motion for a new trial are such as to require special discussion or a reversal.

8. The verdict was supported by the evidence, and there was no error in overruling the motion for a new trial.

NOVEMBER 14, 1911.

Indictment for murder. Before Judge Sheppard. Tattnall superior court. June 6, 1911.

*Way & Burkhalter, Hines & Jordan,* and *John R. Cooper,* for plaintiffs in error.

*T. S. Felder, attorney-general, N. J. Norman, solicitor-general,* and *H. H. Elders,* contra.

LUMPKIN, J.  P. C. Futch and Wallace Futch were jointly in-
dicted for the murder of John B. Deal.  They were convicted, and
recommended to be imprisoned for life.  After the refusal of a
new trial, they excepted.

The headnotes state the rulings, and most of them require no
elaboration.  Penal Code (1910), § 65, contains a statement as to
the law of voluntary manslaughter, which has been the codified law
since the original Code of 1863, and has been adopted and readopted
by the legislature.  We cannot hold that it is either erroneous or
misleading.  In dealing with the subject of provocation which
will reduce a homicide from murder to voluntary manslaughter, it
states, among other things, that "Provocation by words, threats,
menaces, or contemptuous gestures shall in no case be sufficient to
free the person killing from the guilt and crime of murder."  In
other sections of the code are contained statements as to the law of
justifiable homicide in killing one who manifestly intends by vio-
lence or surprise to commit a felony upon the person of another,
and of justification where the circumstances are such as to excite
the fears of a reasonable man that such a felony is about to be
committed.  Penal Code (1910), §§ 70, 71.  The court gave all of
these principles in charge, reading section 65 in its entirety when
he came to charge on the subject, not of justification, but of reduc-
tion of a homicide from murder to voluntary manslaughter.  This
was not confusing or calculated to mislead the jury.  *Price* v. *State,*
ante, 71 (72 S. E. 908).  The court, in the proper connection, hav-
ing charged the law touching acting under circumstances sufficient
to excite the fears of a reasonable man, a reversal will not be granted
because he did not specifically refer to threats and menaces in that
connection.  If the defendants desired a charge to the effect that
the jury might consider evidence of threats and menaces, in con-
nection with the other evidence bearing on the subject of acting
under the fears of a reasonable man, they should have made a
proper request therefor.  *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E.
177).

P. C. Futch fired the gun which killed Deal.  Wallace Futch, his
brother, was with him at the time, taking part in the fight.  The
evidence for the State tended to show, that each of them enter-
tained revengeful feelings toward Deal; that he and Wallace Futch
had had a difficulty very shortly before the homicide; that the two

brothers went to a church where they expected to find Deal, carry-
ing a gun with them; and that they attacked and killed him without
justification. There was also evidence that they afterward denied
having been present or having done the killing. They contended,
that Deal was the aggressor; that P. C. Futch knocked him down
with a gun; that Deal grabbed it and P. C. Futch called to his
brother to "take him loose, he is cutting me;" and that Wallace
Futch grabbed Deal by the back of the neck and gave him "a sling,"
and when he got Deal loose from the gun, P. C. Futch shot. In
his statement Wallace Futch denied that he knew that his brother
carried the gun in the buggy in which they drove to church. It
was contended that the court erred in charging that if the jury be-
lieved from the evidence that P. C. Futch, without just cause, fired
the shot that caused the homicide, and that Wallace Futch "was
present aiding and abetting in the act, then the act of the defend-
ant, P. C. Futch, would be the act of the other defendant, Wallace
Futch, and the latter would be guilty of whatever offense P. C.
Futch may have committed, if any." Considering the excerpts
from the charge on this subject, to which exceptions were taken, in
connection with their context and with other portions of the charge,
we think that the jury could not have been misled as to the meaning
of the court, and that in effect they were informed that if P. C.
Futch committed a crime in killing Deal by shooting him, and
Wallace Futch was present aiding and abetting in the commission
of such crime, he would also be guilty. In the same context with
one of the charges to which exception was taken, the court said:
"Where two or more persons are jointly indicted for a crime, and
one perpetrates the act, and the other is present aiding and abetting
in the commission of the act charged in the indictment, the act of
one is the act of the other." The act charged in the indictment was
the unlawful killing of Deal by shooting him with a gun. So that
the charge amounted to saying that, if one unlawfully fired the shot
and killed the deceased and the other was present aiding and abet-
ting him in doing so, the latter would also be guilty. It was not
the mere presence of Wallace Futch or his aiding and abetting his
brother in the quarrel or even in the fight to which the presiding
judge referred, but presence and aiding and abetting in a felonious
homicide by shooting the deceased. The court charged in regard
to the defense of one brother by another, and also that if the de-

fendants attacked the deceased with no intention to kill him, but only to assault and beat him, and in the struggle between them and the deceased P. C. Futch suddenly formed the intention to kill the deceased, and Wallace Futch did not share in this intention to kill, and did not fire the fatal shot, that would acquit Wallace Futch, unless they found that he was guilty of some lower grade of offense covered by the indictment.

Counsel for plaintiffs in error relied on *Brown* v. *State,* 28 *Ga.* 199. In that case the defendant was indicted for murder as principal in the second degree, and was tried separately and convicted of manslaughter. From the opinion it would appear that this court thought that there was evidence from which it might be inferred that the defendant on trial intended to engage only in an assault and battery, but the other accused assaulted and killed the deceased with a deadly weapon, though his intention to do so was unknown to the defendant on trial (p. 214). The court charged that presence and participation in the act committed was evidence from which the jury might infer "consent and concurrence." This language was criticised, but was not held to be cause for a new trial; and the defendant having been convicted of voluntary manslaughter, the judgment was affirmed (pp. 213, 214). If the contention on behalf of the defendants in the present case were accepted and carried to its logical conclusion, it would seem that the defendant in that case should not have been convicted of voluntary manslaughter, on the hypothesis stated, and there should have been a reversal.

The *Brown* case was cited in *Brooks* v. *State,* 128 *Ga.* 261 (57 S. E. 483, 12 L. R. A. (N. S.) 889). There the defendant was indicted for murder as principal in the second degree, and was tried separately, and convicted. There was no controversy that the deceased was killed by a blow inflicted by the son of the defendant. There was evidence, that a drunken debauch was in progress at a house near the residence of the defendant; that the deceased and a companion were knocking at the door for admittance; that the defendant ordered them to leave, and, when the deceased cursed her, threw a chip or rock at him, and later fired a pistol in the air, in order to frighten him; and that her son ran from the house, and, without a word, struck the deceased a mortal blow with a stick. The presiding judge charged that presence alone was insufficient to establish the defendant's guilt as a principal in the second degree,

but the evidence must go further and show that she aided and abetted her son in doing the act. He was requested to give in charge certain instructions defining the meaning of abetting and stating what would constitute it, but declined to do so. It was said that the case was a close one, and that the failure to give the requested instructions was cause for a new trial.

The case of *Kimball* v. *State*, 112 *Ga.* 541 (37 S. E. 886), was also cited. In that case a person was indicted, as a principal in the second degree, for assault with intent to murder. If one kills by the use of a deadly weapon in the way in which it is ordinarily employed, the intent to kill may be inferred from the actual killing. Where there is an assault, but no homicide, the intent to murder is an essential ingredient of the crime of assault with intent to murder, which must appear from the evidence; and the murderous design is necessary to the conviction of one charged as a principal in the second degree. Section 42 of the Penal Code of 1910 defines a principal in the second degree to be "he who is present, aiding and abetting the act to be done." Conspirators may each be responsible for the act of the other in carrying out the common design, though the actual thing done was not agreed upon. On the other hand, there may be presence or even participation to some extent in the general transaction, without amounting to "aiding and abetting the act to be done." But if the act to be done is a felonious homicide by shooting with a gun, and there is presence and an aiding and abetting of that felony, the code in terms applies. In this State, except where otherwise provided, a principal in the second degree receives the same punishment as a principal in the first degree; and it has been held that one may be indicted as a principal in the first degree and convicted as such, if the evidence shows that he was either the absolute perpetrator of the crime, or that he was present aiding and abetting the other in its commission. *McLeod* v. *State*, 128 *Ga.* 17 (57 S. E. 83); *Bradley* v. *State*, Id. 20 (Id. 237).

From what has been said we think it sufficiently appears that there was no such error as requires a reversal, if there was any inaccuracy in language at all.

The remark of counsel for the State, made without due consideration, was withdrawn and a full disclaimer of any desire to prejudice the case was made. The remark was only an expression

of opinion, not a statement of facts outside of the evidence; and the refusal to grant a mistrial furnished no reason for a reversal, although the judge did not instruct the jury as to such remark, or reprimand counsel.

*Judgment affirmed. All the Justices concur, except Beck, J., absent, and Hill, J., not presiding.*