## 5069.  TAYLOR *v.* THE STATE.

1. The discretion of the trial judge in refusing to grant a new trial on the ground of newly discovered evidence will not be controlled, unless it plainly appears that the evidence alleged to have been newly discovered would probably change the result. This rule is peculiarly applicable where the alleged newly discovered testimony in a criminal case relates to facts which are not vitally material to the issue of the defendant's guilt or innocence.
2. In passing upon a ground of a motion for a new trial in a criminal case, based upon alleged bias and prejudice of a juror against the movant, evidenced in part by expressions of opinion previous to the trial as to the guilt of the accused, the judge of the trial court occupies the place of a trior, and his finding that the juror was competent will not be reversed, unless it is manifest that his discretion was abused.
.3. The evidence authorized the conviction of the accused of the offense of voluntary manslaughter, and there was no error in refusing a new trial.

DECIDED OCTOBER 29, 1913.

Conviction of manslaughter; from Heard superior court—Judge R. W. Freeman. June 9, 1913.

*S. Holderness, Willis Smith, J. L. Smith, M. U. Mooty, W. C. Hodnett, W. C. Wright,* for plaintiff in error.

*J. R. Terrell, solicitor-general,* contra.

RUSSELL, J. Dawson Taylor was convicted of the offense of voluntary manslaughter, and he excepts to the judgment overruling his motion for a new trial. We have carefully examined the voluminous record and the various assignments of error, and we find no reason for a reversal of the judgment of the learned trial judge who presided in the case. The tragedy which resulted in a homicide had many circumstances which rendered it more than usually deplorable, but the evidence authorized the verdict, which has been stamped with the approval of the presiding judge. There is no ground for complaint in the conduct of the trial.

One of the defenses of which the accused seeks to avail himself,—the conceded right of mutual defense as between brothers (*Mattox* v. *State,* 9 *Ga. App.* 293), is inapplicable to the facts of this case, because the evidence shows that if any attack was made upon Lee Taylor with metal "knucks," or other weapon, such assault was made not by Frank McWaters, who was shot and killed, but by Glenn McWaters, his son. If Lee Taylor was being assaulted with metal knucks, the defendant, his brother, would have had the right to intervene and use any necessary force in protecting

44

him from injury, but there is no evidence that Frank McWaters was assaulting the defendant's brother with any weapon. The defendant may have been justified in shooting Glenn McWaters, but even if Frank McWaters was making an assault upon the defendant's brother (but not using any weapon), and the defendant shot and killed him, he can not complain if he was only convicted of voluntary manslaughter.

The merits of the defendant's contention that he should have a new trial rests upon two grounds: that of newly discovered evidence, and alleged bias on the part of certain members of the jury who tried the case.

1. Upon the hearing of the motion for a new trial the movant tendered the affidavit of a niece of the deceased, who testified that she had refused to disclose the facts, on account of her relationship. The young lady does not claim to have been a witness to the homicide. Her testimony relates merely to certain facts which would tend to discredit the testimony of witnesses who were introduced upon the trial, and to a circumstance which would show that the deceased was perhaps very drunk at the time that he received the mortal blow. For this reason we think the trial judge could have disregarded the alleged newly discovered testimony as merely cumulative and impeaching. We do not say, however, that he did reject it solely upon this ground; for cases can be imagined where evidence might be so absolutely impeaching and directed to points of such vital importance in the case as that, with this evidence in the record, an entirely different result might be anticipated upon another investigation of the case; and the most important criterion in regard to newly discovered evidence we apprehend to be the reasonable probability of a different result being reached from that which has already been attained.

There seems to be some conflict as to whether Miss McNaughton's statement was that the deceased vomited a half gallon or more, and as to how heavily laden this discharge was with whisky. We fail to see how this testimony could materially affect the result, or even why the result should be different if it should be conceded that the deceased was thoroughly intoxicated. Miss McNaughton's testimony as to the witness Lunsford is purely impeaching. It does appear from the alleged newly discovered testimony that the deceased, after vomiting, said that he wanted nothing done with the

Taylor boys, as he and his son were to blame. We have no doubt the trial judge considered the statement of the deceased, that he and his son were to blame, as well as a similar statement made to the witness Mobley, as merely the opinion of the deceased, and a mere conclusion, without a statement of any fact from which it could be determined whether the right conclusion, in fact and in law, was reached. The deceased told Mobley that whisky and his temper overcame him and he became crazy. At best this would indicate only mutuality of intent to fight, and the accused was not convicted of murder, but only of voluntary manslaughter; and certainly if the defendant violated the law, the fact that the particular party who was injured did not wish to see the law enforced against his assailant would be no reason why the law should not be vindicated. The fact that this witness would testify on another trial that the ground was torn up as if there had been a scuffle might tend to discredit some of the testimony introduced at the trial now under review; but since it is undisputed that there was a homicide, it would support the inference that the offense committed was that of voluntary manslaughter, rather than that of murder. There was other newly discovered testimony, but it tended merely to impeach various witnesses of the State who testified at the trial. The character of the deceased for violence could not be available, because it does not appear, even from the defendant's own statement, that the deceased was doing enough for that defense to be employed.

Nothing in support of the ground of the motion for new trial based upon newly discovered testimony is offered that will warrant even a suggestion that the trial judge abused his discretion in overruling this ground, and it does not appear that the newly discovered testimony would or should produce a different result. This being true, this court is controlled by the numerous decisions of the Supreme Court in which it is held that the discretion of the trial judge will not be controlled, in passing upon the ground of a motion for a new trial based upon newly discovered testimony, unless it appears that a different result would probably be reached upon another investigation, and that the trial judge abused his discretion in not granting a new trial.

2. In support of the motion for a new trial affidavits of numerous witnesses were introduced for the purpose of showing that two

of the jurors were prejudiced and biased against the accused. According to this testimony one of these jurors said before the trial that the defendant ought to be convicted, and that if he (the juror) were on the jury he would be convicted; and the statement attributed to the other juror by a number of witnesses was practically to the same effect. In fact the juror Crockett was alleged to have gone so far as to say that the defendant "ought to be hung," and he didn't see any other chance for him. The witnesses attacking these jurors were properly vouched for, and it appears that the defendant and his counsel were in ignorance of the existence of any bias in the minds of the jurors, and had no reason to suspect that they had expressed themselves against the accused. However, each of the attacked jurors denied on oath the statements attributed to him and asserted that he was controlled solely by the evidence delivered upon the stand in the rendition of the verdict. In this conflict it was for the judge passing upon the motion to determine who swore truly,—the witness who attacked the jurors, or the jurors themselves. The credibility of the witnesses on the one hand and of the jurors on the other was a matter solely for his determination, and his conclusion is not reviewable.

In the attainment of justice nothing is more indispensable than that the minds of the jurors who are to pass upon the issue be perfectly impartial, but the law places upon the trial judge, and, we think, wisely, the responsibility of determining the competency of the jurors, and clothes him with a discretion which will not be controlled, unless it is manifest that it has been abused. The decisions are uniform upon this point. We can not say that in the present case the learned judge who presided at the trial erred. See, in this connection, *Costly* v. *State,* 19 Ga. 614; *Vann* v. *State,* 83 Ga. 60 (9 S. E. 945); *Buchanan* v. *State,* 24 Ga. 286 (2); *Brinkley* v. *State,* 58 Ga. 296 (3); *Durham* v. *State,* 70 Ga. 265 (12); *Huff* v. *State,* 104 Ga. 521 (7) (30 S. E. 808); *Allen* v. *State,* 102 Ga. 619 (29 S. E. 470); *King* v. *State,* 119 Ga. 426 (46 S. E. 633); *Jones* v. *State,* 117 Ga. 710 (44 S. E. 877); *Perry* v. *State,* 117 Ga. 719 (45 S. E. 77); *Hall* v. *State,* 124 Ga. 649 (52 S. E. 891); *Moore* v. *State,* 1 Ga. App. 728 (57 S. E. 956); *DeVane* v. *Atlanta &c. R. Co.,* 4 Ga. App. 141 (5) (60 S. E. 1079); *Daniel* v. *State,* 11 Ga. App. 800 (4) (76 S. E. 162). The finding

of a trial judge that a juror who has been attacked for bias or prejudice is competent will not be reversed, unless it is apparent that he has abused the discretion which the law vests in him in such cases.                                   *Judgment affirmed.*