## HALL *v.* THE STATE.

1. The discretion of a trial judge, who passes upon the alleged prejudice and bias of a juror from conflicting evidence on a motion for new trial, will not be interfered with unless it is manifestly abused. No abuse of discretion appears in this case.
2. It is not cause for a new trial that pending deliberation by the jury on a trial for murder they were placed in a room adjoining the rear of the court-room, where the walls were not plastered but were covered with laths through the spaces of which could be seen persons in the jury-room and the court-room, where it appears from the record that the two attending bailiffs were instructed by the court not to allow any communication with the jury by any one, which order was strictly obeyed, and no communication was had with any one by the jury.
3. Motions for new trial, based on newly discovered evidence, are addressed largely to the discretion of the trial judge; and this court will not reverse his decision refusing a new trial on such ground, unless it is abused. No such abuse of discretion appears in this case.
4. It is not error to refuse a written request to charge, where the charge requested is substantially given in the general charge.
5. It was not error for the court to refuse to give in charge to the jury the requested instruction set forth in the fifth division of the opinion.
6. For the reasons stated in the sixth division of the opinion, it was not error to refuse to instruct the jury: "Where the husband is on trial for the offense of murder, his wife is an incompetent witness, and can not testify in his favor, notwithstanding the fact that other witnesses are allowed to testify to acts and sayings of the wife of the defendant on trial."
7. On the trial of one accused of murder, it was not error to refuse to allow counsel for the defendant to ask a witness, as original evidence, "Is it true that Mr. I. B. Hall [the defendant] went over to Mr. Bennett's and 'phoned down for the sheriff?"
8. It was not error for the court to direct the witness to answer the questions set out in the 8th division of the opinion.
9. It is the duty of the judge to suppress disorder during the trial of the case, and, where necessary, to rebuke and punish those causing it, on his own motion. But where in such a case the court rebuked and punished the person or persons causing the impropriety, and no objection was made to the disorder, pending the trial, by the defendant or his counsel, and no motion was made to declare a mistrial by reason thereof, and no ruling was invoked from the court with reference thereto, it is not cause for a new trial that the court did not of his own motion declare a mistrial.
10. The verdict is supported by the evidence.

NOVEMBER 12, 1913.    REHEARING DENIED NOVEMBER 25, 1913.

Indictment for murder. Before Judge Thomas. Tift superior court. August 14, 1913.

*Fulwood & Skeen, R. D. Smith, R. A. Hendricks,* and *John R. Cooper,* for plaintiff in error.

*T. S. Felder, attorney-general,* and *J. A. Wilkes, solicitor-general,* contra.

HILL, J. The defendant, I. B. Hall, was convicted of murder, without recommendation. He made a motion for new trial, which was overruled, and he excepted.

1. The first and second grounds of the motion for new trial complain that two of the jurors who served in the trial of the case, and who returned a verdict of guilty against the defendant, were not fair and impartial, but were, on the contrary, prejudiced against the defendant prior to and at the time of the trial, and at the time they qualified as jurors, and during the time they deliberated as such in the case. As tending to show the bias and prejudice of one of the two jurors, it was alleged that he expressed the opinion, in the presence of M. A. Howard, that the defendant ought to be hung; and in the presence of R. G. Coarsey, that the defendant ought to be lynched; and in the presence of J. P. Davis, that he hoped that they would not get him on the jury, for his mind was already made up; and in the presence of G. W. Whittington, that he never had any use for the defendant, and was willing to join in a crowd to lynch him; and in the presence of W. G. Gilstrop, that he just wanted to get on the jury so that he could hang the defendant. It was insisted that the other juror was likewise biased and prejudiced; and, as evidence tending to show it, that he went to the house where the tragedy occurred, to console and sympathize with the wife and children of the deceased, and sat up with the corpse of the deceased, and while doing so declared, in the presence of G. W. Whittington, that the defendant ought to be lynched that very night. These grounds of the motion were supported by the affidavits of those purporting to have heard the remarks attributed to the jurors, and of witnesses supporting the good character of the defendant's witnesses. The State submitted the affidavits of the two jurors attacked, denying each and every allegation made against them, and averring that their minds were perfectly impartial between the State and the accused. There were many affidavits supporting the general good character of the two jurors attacked. Four witnesses, who were present with the juror Davis on the night that the latter sat up with the corpse of Dennis W. Hall, the deceased, made affidavit that no such statement was made by the

juror during that night in the presence of G. W. Whittington, nor in their presence, nor in the presence of any one in their knowledge.

It is well settled in this State that the trial judge is the trior as to the competency and disqualification of the jurors under the evidence, and that his discretion in refusing a new trial because of the alleged disqualification of a juror on account of bias and prejudice will not be disturbed unless it is manifestly abused. We have examined the evidence upon the question, and it does not appear that there was any abuse of discretion on the part of the trial judge in refusing to grant a new trial on this ground. *Ray* v. *State,* 15 *Ga.* 223; *Costly* v. *State,* 19 *Ga.* 614 (2); *Buchanan* v. *State,* 24 *Ga.* 286 (2); *Brinkley* v. *State,* 58 *Ga.* 296 (3); *Durham* v. *State,* 70 *Ga.* 265 (12); *Vann* v. *State,* 83 *Ga.* 46 (15), 58 (9 S. E. 945); *Hill* v. *State,* 91 *Ga.* 154 (16 S. E. 976); *Allen* v. *State,* 102 *Ga.* 619 (29 S. E. 470); *Huff* v. *State,* 104 *Ga.* 521 (7), 524 (30 S. E. 808); *Carter* v. *State,* 106 *Ga.* 372 (32 S. E. 345, 71 Am. St. R. 262); *Hackett* v. *State,* 108 *Ga.* 40 (33 S. E. 842); *Roberts* v. *State,* 110 *Ga.* 253 (34 S. E. 203); *Bowdoin* v. *State,* 113 *Ga.* 1150 (39 S. E. 478); *Jones* v. *State,* 117 *Ga.* 710 (44 S. E. 877); *King* v. *State,* 119 *Ga.* 427 (46 S. E. 633); *Cox* v. *State,* 124 *Ga.* 95 (52 S. E. 150); *McCrimmon* v. *State,* 126 *Ga.* 560 (55 S. E. 481); *McLeod* v. *State,* 128 *Ga.* 18 (57 S. E. 83); *Crawford* v. *State,* 128 *Ga.* 30 (57 S. E. 94); *McNaughton* v. *State,* 136 *Ga.* 600 (71 S. E. 1038); *Jefferson* v. *State,* 137 *Ga.* 382 (73 S. E. 499); *Embry* v. *State,* 138 *Ga.* 464 (75 S. E. 604).

2. The third ground of the motion complains because, after the case was submitted, the jury were carried to an improper place to deliberate, in that a large crowd remained in the court-room, at the rear of which existed an open closet in which a large section of the wall had not been plastered, there being nothing but lathing with large spaces between, through which not only outside conversation in the court-room could be easily heard, but direct communication be had by the jury with persons in the court-room, orally, by sight, and in writing; on account of which this defendant did not have that fair and impartial trial to which the law entitled him. In a note to this paragraph of the motion the presiding judge certified that the jury was taken, under instructions, from the court-room to the jury-room, where the juries were always carried, and where such juries have been carried since the creation of Tift

county, the new court-house being in course of construction; and that he could not certify that the conversations in the court-room could be easily heard in the jury-room, nor that direct communication could be had with persons in the jury-room orally, by signs, or in writing, on account of the conditions. "I caused two sworn bailiffs to be placed with the jury, and every safeguard thrown around the jury to protect it from the slightest intervention from outside sources. I was in the court-room constantly, holding court, and could not have heard anything at all from the jury-room, and apprehended that nothing could be heard in the jury-room from the court-room." The two sworn bailiffs who attended the jury in this case testified, that no one tried to communicate with the jury in any manner whatever, and that had any one done so they would have known about it; that the jury was absolutely "under guard at all times," and that while deliberating in the jury-room, one of the deponents guarded the door and the other kept watch around the jury-room on the outside to see that no one came anywhere about the jury-room; and that no person entered the closet to their knowledge, and could not have entered without their knowledge; and that the conduct of the jury was in accordance with the instructions of the court that the jury were never to communicate with any one without the permission of the court.

There is nothing in the motion, or otherwise, showing affirmatively that there was any communication between the jury or any member of it and those on the outside of the jury-room during the consideration of the case; and in view of the certificate of the presiding judge, and the affidavits of the attending bailiffs, we think the court did not err in refusing a new trial on this ground of the motion. It nowhere appears that the defendant was hurt in any way by reason of the jury deliberating in the places they did. See *Brown* v. *City of Atlanta,* 66 *Ga.* 76.

3. Error is assigned because the court refused a new trial because of the newly discovered evidence of T. S. Marchant, who would testify: "That on the day Dennis W. Hall was killed, and about half an hour before the shooting, Dennis W. Hall came to the place of business of the affiant and paid affiant $3.51, and redeemed his pistol which was held by affiant as collateral security." Motions for new trial on the ground of newly discovered evidence are addressed largely to the discretion of the trial judge; and

unless that discretion is abused, this court will not reverse his decision and order a new trial. *Jones* v. *State*, supra; *Miller* v. *State*, 119 *Ga.* 561 (46 S. E. 838). The newly discovered evidence of Marchant would probably not affect the verdict on another hearing, in view of the counter-showing made by the State to the effect that the pistol of the deceased was left with M. B. and W. H. McClelland prior to the commission of the homicide, and that it was not shown that the deceased had a pistol at the time he was killed, but on the contrary the witness who testified with regard to it said he had no pistol. See *Taylor* v. *State*, 135 *Ga.* 622 (70 S. E. 237); *Burge* v. *State*, 133 *Ga.* 431 (66 S. E. 243); *Mitchell* v. *State*, 138 *Ga.* 21 (74 S. E. 690).

4. It was not error to refuse the requests to charge contained in the fifth and sixth grounds of the motion, for the reason that they were substantially given in the general charge.

5. Error is assigned because of the refusal of the court to give the following charge: "If you believe from the evidence that after the defendant fired the shot that killed the deceased he made no effort to escape, but voluntarily surrendered himself up to the officers of the law, this would be a circumstance you would be entitled to consider as throwing light upon the state of mind of defendant as to whether he was acting in good faith and believed at the time he was justified in the act." It has been held by this court that "The fact that a person accused of a crime and placed under arrest made no attempt to escape can not be proved by him in his own behalf." *Lingerfelt* v. *State*, 125 *Ga.* 4 (53 S. E. 803, 5 Ann. Cas. 310). It follows that the court did not err in refusing to charge as requested.

6. The eighth ground of the motion complains of the refusal of the court to give the following instruction to the jury: "Where the husband is on trial for the offense of murder, his wife is an incompetent witness and can not testify in his favor, notwithstanding the fact that other witnesses are allowed to testify to acts and sayings of the wife of the defendant on trial." In a note to this ground of the motion the presiding judge certified that "the jury understood full well that the wife could not testify in behalf of the husband, because the attorneys for the defendant, in the presence of the jury, tendered the wife as a witness for the defendant, and it became the duty of the court, in the presence and hearing of the

jury, to rule out this testimony, with the open and expressed statement, more than once, that it was ruled out because the wife, under the law, could not testify in behalf of the husband." The presiding judge had stated in the presence of the jury the substance of the request of the defendant. Even if the request to charge was proper, the failure to so charge could not hurt the defendant, as the jury understood from the ruling of the court, on the question of evidence, why the wife did not testify in behalf of the defendant. The failure to charge as requested was not error.

7. Complaint is made because the court refused to allow counsel for defendant to ask the witness Thrasher the following question: "Is it true that Mr. I. B. Hall went over to Mr. Bennett's and 'phoned down for the sheriff?" In the case of *Jones* v. *State*, 132 *Ga.* 340 (63 S. E. 1114), this court held: "On the trial of a defendant charged with murder, it was not erroneous for the judge to exclude testimony offered by the defense to the effect that a few moments after the homicide he went to the sheriff and admitted the killing and surrendered himself, the testimony not being offered in rebuttal or explanation of any evidence introduced by the State, but merely as original evidence." This question comes within the ruling made in the *Jones* case; and therefore the court did not err in excluding the testimony.

8. The 16th ground of the motion complains because the court, over the objection of counsel for defendant, directed the witness Ben Lanier to answer the following question: "How came Dennis W. Hall in the house, do you know?" The answer given by the witness was as follows: "Mrs. Hall asked me to find somebody to move in there; that is Mrs. I. B. Hall." And the 17th ground likewise complains against the admission of the following: "My name is Ben Lanier. I made the trade between Dennis W. Hall and Mrs. I. B. Hall about the house. Mrs. Hall asked me to find somebody to move there. I mean the wife of the defendant, I. B. Hall. I told Dennis W. Hall he could get the house. Mrs. I. B. Hall told me that he could get it for the rest of the year. He was to pay $7.50 a month as long as Mrs. I. B. Hall's things stayed in the house, and when they took them out he was to pay $12.50. I know of my own knowledge that he paid the rent. Mrs. Hall, the wife of the defendant, authorized the deceased to go in the house under a contract of rental. He moved into the house. I am posi-

tive of that. I think he was in there about two months before the trouble, and Dennis W. Hall told Mrs. I. B. Hall that he did not want the house unless he could get it for the balance of the year. Mrs. Hall answered him and told him that there was not any work here for Mr. Hall and his work was in Florida, and that it was too expensive for him to stay there and come here, and she wanted to move there. Mr. I. B. Hall did not authorize Dennis W. Hall to go in that house. None of the conversations about the contract of rental were in the presence of I. B. Hall or communicated to him. He was in Florida." The court admitted the evidence with the statement: "I am going to admit any testimony to show that he was in the house of the defendant and how he happened to be there; and that is the only purpose for which it is admitted."

We think the testimony objected to was properly admitted by the court. It tended to explain why the deceased was in the house; that he was there by consent and procurement of the wife of the defendant, as a tenant, and that he was not a trespasser. The jury could have found from the statement of the accused that he recognized the tenancy of the decedent under the agreement of rental made by the wife of the accused. The evidence objected to tended to show the character of the occupancy by the deceased, and was admissible for that purpose.

9. The 18th ground of the motion complains that the court committed error in not declaring a mistrial and withdrawing the case from the jury, on account of the applause given to the counsel for the State, in the presence of the jury, "and while he was making an eloquent appeal for the State to the jury," and of the failure of the court to exclude the man applauding from the court-room. With reference to this incident Judge Thomas certifies as follows: "I certify that R. A. Hendricks, of counsel for the defendant, had previously argued the case, and in the course of his argument did make frequent reference to the testimony of Mrs. Tiffy Lanier, and attacked her testimony and repeatedly referred to the evidence that her husband, he said, came from Bulloch county; and Mr. Covington, in reply, in his humorous way, urged that a few of us were not conferred with as to our birthplace. This latter reference created some little amusement in the court-room, and particularly attracted Ben Lanier, the husband of Mrs. Tiffy Lanier, the witness, and he applauded by popping his hands. When this occurred Mr.

Lanier was on the opposite side of the court-room from the jury. He was over towards the stairway that leads out of the court-room, and I judge about half way from where the judge was to the stairway. I immediately arrested the proceedings in the court-room, and announced that such conduct would not be tolerated, and ordered the sheriff to arrest Mr. Lanier and collect five dollars from him as a fine and take him out of the court-room; whereupon the sheriff, who was near where the judge was, immediately proceeded to the place where Mr. Lanier was, and appeared to be carrying out the court's orders; and quiet was restored, and then I directed the case to proceed. The sheriff later informed me that he did take him out of the court-room, but that he did not have five dollars in his pocket at the time, and that a friend assumed the responsibility for the payment of the money the next morning, and he released him until that time upon that statement of facts. Everything I said and did was done openly in the presence of the jury and the crowded court-room, and no one could fail to understand that the court expressly disapproved the misconduct of Lanier. So far as the court knew, counsel on both sides were satisfied, because no complaint was made by counsel for the defendant or the State; no motion was made that the court declare a mistrial or give any additional instructions; and the words used, which prompted the misconduct, being humorous, it did not occur to the judge that more was necessary to be done than was done, and particularly so in the absence of a motion of some kind from either side." It is insisted that the failure of the presiding judge to declare a mistrial on his own motion was harmful error; that the applause was calculated to prejudice the minds of the jury against the defendant; that it is impossible to say what impression this applause made upon the mind of the jury; and that the failure of the presiding judge to warn the jury not to be influenced by the applause was grievous error. It will be seen from the certificate of the trial judge that he caused the trial of the case to be arrested, and not only rebuked the conduct of the party making the applause, but caused the sheriff to arrest the offender and to collect a fine of five dollars and to take him from the court-room. The sheriff appeared to be carrying out the orders of the court, who then directed the case to proceed. Counsel for defendant evidently thought at the time that the rebuke of the court was sufficient for

the present, and to prevent a recurrence in the future; for no motion to declare a mistrial was made by the defendant or his counsel. It is the duty of the trial judge to suppress disorder during the progress of a trial, and to rebuke where necessary, and punish those committing disorder on his own motion; and this was done in the instant case. Under the circumstances recited in the record, we think the court did not err in not declaring a mistrial on his own motion. *Odell* v. *State*, 120 *Ga.* 152 (5), 154 (47 S. E. 577). We do not mean to intimate that if a motion had been made in this case to declare a mistrial it should have been granted.

10. The other assignments of error are without substantial merit. The charge of the court fully covered the issues in the case. The evidence authorized the verdict, and the court did not err in refusing a new trial.

The affidavits submitted by the State in connection with the hearing of the motion for a new trial are properly before this court for consideration. *Judgment affirmed. All the Justices concur.*